669 P.2d 604

**STATE of Arizona, Appellee,**

v.

**Gabriel VENEGAS, Appellant.**

**No. 1 CA–CR 6027.**

Court of Appeals of Arizona, Division 1, Department A.

April 19, 1983.

Rehearing Denied July 21, 1983.

Review Denied Sept. 13, 1983.

**172**

Robert K. Corbin, Arizona Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div. and Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by H. Allen Gerhardt, Deputy Public Defender, Phoenix, for appellant.

## OPINION

OGG, Judge.

Shortly after midnight on August 23, 1981, officers David Cummings and Nora Wysocki observed a station wagon as it made a left turn onto Indian School Road in Phoenix, Arizona. As several cars were forced to slow down to avoid colliding with the station wagon, these officers pulled the station wagon over at 17th Street and Indian School Road. Officer Paul Griego arrived shortly thereafter and served as the backup officer for officers Cummings and Wysocki.

Steve Yawnez was the driver of the car and appellant was the only passenger. As Mr. Yawnez had no driver's license in his possession and there was an outstanding misdemeanor warrant for him, the officers arrested Mr. Yawnez and placed him in the back of the police car operated by officers Cummings and Wysocki.

During this stop, the officers noticed that appellant smelled strongly of alcohol, had slurred speech, and lacked coordination in his movements. All three officers concluded that appellant was intoxicated.

Officer Cummings told appellant that he was too intoxicated to be driving a car and that he would not allow appellant to drive his vehicle. Appellant replied that he knew he had too much to drink, that he would not drive, and that he was going to call someone to come and get him. Officer Cummings then told appellant there was possibly a phone booth near the intersection of 16th Street and Indian School Road by the chicken restaurant, approximately a block away.

Officer Cummings warned appellant again not to drive and that if appellant was caught driving the car that evening, appellant would be arrested and booked into jail. Appellant assured officer Cummings that he would not be driving and the officer gave appellant the keys to the car, which car belonged to appellant's mother. Appellant then started walking towards the chicken restaurant and all three officers left the scene, although officer Griego parked only a short distance away, where he stopped to fill out paper work.

About five minutes after officer Griego had left the scene, he noticed the same station wagon pulling up to the intersection at 17th Street and Indian School. Officer Griego fell in behind the vehicle and put on his red lights and spotlight in an attempt to stop the vehicle. The vehicle did not stop but instead led officer Griego and other officers on a high speed chase through Phoenix. The chase ended when appellant collided with a motorcycle at 7th Avenue and Thomas. The two persons riding the motorcycle were killed instantly and the

station wagon hit a concrete wall. Appellant was the only person in the station wagon and although he was injured, he survived. At the time of the collision, the minimum speed of the station wagon was at least 70 miles per hour. Approximately three hours after the collision, a test revealed appellant's blood alcohol level to be .10.

Appellant was charged with two counts of second degree murder, class two and dangerous felonies. Appellant waived the right to a trial by jury and a trial to the court commenced on February 9, 1982. On February 16, 1982, the court found appellant guilty of two counts of negligent homicide, class four and dangerous felonies. Appellant was sentenced on March 18, 1982 to four years imprisonment on each count. The counts were ordered to run concurrently and appellant was given credit for presentence incarceration. This appeal followed.

The issues as raised by the appellant are:
1. Whether the trial court should have found appellant not guilty by reason of pathological intoxication.
2. Whether appellant's conviction should have been found to be nondangerous.

## INTOXICATION

During appellant's trial, two psychiatrists, Dr. Walter Fox and Dr. Otto Bendheim, testified that at the time of the high speed chase, appellant was suffering from pathological intoxication. Dr. Fox testified that pathological intoxication is a condition in which an individual behaves in a very bizarre, unusual, and often in a violent way after the consumption of an amount of alcohol that would not cause such behavior in the average individual. It is usually characterized by complete lack of memory of the episode. Dr. Bendheim's definition of pathological intoxication was similar to Dr. Fox's definition and it was uncontroverted that appellant suffered from pathological intoxication during the high speed chase. Dr. Bendheim also testified that during the chase, appellant was not aware of the nature, quality and consequences of his actions, was no longer able to control his conduct, and was no longer aware of his actions.

From this testimony, appellant argues that appellant did not commit a voluntary act when he was driving the car which hit and killed two persons. Appellant cites A.R.S. § 13–105(32), which defines a "voluntary act" to mean "a bodily movement performed consciously and as a result of effort and determination." A voluntary act is essential to establishing appellant's criminal liability here, because A.R.S. § 13–201 provides:

> The minimum requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform a duty imposed by law which the person is physically capable of performing.

According to appellant, his pathological intoxication precluded him from committing a voluntary act and hence provided a complete defense to negligent homicide. The court, however, finds that appellant's pathological intoxication did not preclude him from committing a voluntary act.

Even if it is assumed that appellant was suffering from pathological intoxication during the high speed chase, and even if one assumes that appellant did not appreciate the wrongfulness of his actions, such conditions do not mean that appellant's bodily movements were performed other than consciously and as a result of effort and determination. *See* A.R.S. § 13–105(32). While Arizona's statutes do not define the term "consciously", the courts in California have defined an unconscious act to be "one committed by a person who because of somnambulism, a blow on the head, or similar cause is not conscious of acting and whose act therefore cannot be deemed volitional." *People v. Ray*, 14 Cal.3d 20, 25, 120 Cal. Rptr. 377, 379, 533 P.2d 1017, 1019 (1975). A person who leads police on a high speed chase through the streets of Phoenix for several miles, making turns and avoiding police cars, is hardly a person who is performing unconsciously. Thus, appellant's

conduct falls within the definition of a "voluntary act" and criminal liability cannot be avoided here pursuant to A.R.S. § 13–201.

▮ Furthermore, even if appellant had been unconscious during the high speed chase, unconsciousness caused by voluntary intoxication is no defense to a negligent homicide charge. *See People v. Kelly,* 10 Cal.3d 565, 111 Cal.Rptr. 171, 516 P.2d 875 (1973) (unconsciousness caused by voluntary intoxication is no defense to a general intent crime). "Voluntary intoxication" is defined in Arizona to mean:

> [I]ntoxication caused by the knowing use of drugs, toxic vapors or intoxicating liquors by the defendant, the tendency of which to cause intoxication the defendant knows or ought to know, unless the defendant introduces them pursuant to medical advice or under such duress as would afford a defense to an offense.

A.R.S. § 13–105(33).

In this case, appellant voluntarily consumed four cans of beer, two glasses of beer, and one drink of tequila during the evening prior to the detention of Mr. Yawnez and appellant near 17th Street and Indian School Road. Appellant knew for months prior to August 23, 1981 that after only two beers, his world would be blurry, he would talk more, he would often go to sleep, and he would not remember going to sleep. Indeed, appellant gave the keys to the car to Mr. Yawnez on August 23, 1981 because he knew he was too drunk to drive.

▮ While appellant's memory of the morning of August 23, 1981 is sparse, appellant did recall that during the detention by officers Cummings, Wysocki and Griego, he knew he was too drunk to drive and that he told the officers he was too drunk to drive. Appellant further recalled sticking his hand in through the car window and unlocking the door after the detention and he even remembered starting and backing up the car. Appellant admitted at trial that even at the time he was starting and backing up the car, he knew he was too drunk to drive. There was also psychiatric testimony that appellant was not subject to pathological intoxication prior to and during the time he

was backing up the car. Thus, the record in this case contains evidence that appellant was voluntarily intoxicated.

Admittedly, because of pathological intoxication, it took less liquor to produce antisocial results than with one not so afflicted, and the antisocial results were more serious than in the case of normal intoxication. Nevertheless, the disability which appellant acquired from drinking liquor was within his own control and he knew the consequences of his drinking. Appellant became pathologically intoxicated that morning only after he had voluntarily consumed significant quantities of alcohol. *Cf. Kane v. United States,* 399 F.2d 730 (9th Cir.1968), *cert. denied,* 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699 (1969) (defendant became pathologically intoxicated only after he voluntarily began to drink). *See also United States v. Burnim,* 576 F.2d 236 (9th Cir.1978) (mental disability must have been brought about by circumstances beyond the control of the actor before one can find insanity); *State v. Cooper,* 111 Ariz. 332, 529 P.2d 231 (1974) (a temporary episode of mental incapacity caused by voluntary use of liquor is not a defense to crime, except to show lack of specific intent); *State v. Curry,* 127 Ariz. 1, 617 P.2d 785 (App.1980) (where a person drinks intoxicating liquor and is sane both prior to drinking and after the influences of the intoxicant have worn off, but is insane by the applicable test while under its influence, he is not excused from the responsibility of the criminal act because his insanity is only temporary). A.R.S. § 13–503 specifically states:

> No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition, but when the actual existence of the culpable mental state of intentionally or with the intent to is a necessary element to constitute any particular species or degree of offense, the jury may take into consideration the fact that the accused was intoxicated at the time in determining the culpable mental state with which he committed the act.

In this case, the defendant was convicted of negligent homicide. *See* A.R.S. § 13–1102. As negligent homicide requires the culpable mental state of "criminal negligence", *see* A.R.S. § 13–1102(A); A.R.S. § 13–105(5)(d), and not "intentionally" or "with the intent", *see* A.R.S. § 13–105(5)(a), then voluntary intoxication is not a defense to negligent homicide and therefore, appellant's pathological intoxication is not a defense of any kind in this case. *See* A.R.S. § 13–503.

## DANGEROUSNESS

A.R.S. § 13–604(F) provides for enhancement of punishment where a dangerous instrument has been used. *See also* A.R.S. § 13–604(K) (which defines "dangerous nature of the felony"). In this case, the state alleged that the dangerous instrument used was the automobile which the appellant drove. "Dangerous instrument" has been defined to mean "anything that *under the circumstances in which it is used,* attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." A.R.S. § 13–105(7). (Emphasis added)

■ Appellant does not contest that an automobile is readily capable of causing death or serious physical injury, but instead submits that the above definition of "dangerous instrument" includes an intent requirement equal to the intentional or knowing conduct required for a finding of dangerousness when a serious physical injury is established. Appellant's only apparent authority for this proposition is the disjunctive definition of "dangerous nature of the felony" in A.R.S. § 13–604(K). A.R.S. § 13–604(K) states, in pertinent part, that " '[d]angerous nature of the felony' means a felony involving the use or exhibition of a deadly weapon or dangerous instrument or the intentional or knowing infliction of serious physical injury upon another." However, appellant fails to suggest any logical reason for requiring that a dangerous instrument be used intentionally or knowingly in order to establish the dangerous nature of the felony, when the statute itself does not specify that the dangerous instrument be used intentionally or knowingly, and the statute does specify that infliction of serious physical injury upon another be done intentionally or knowingly before there can be a finding of dangerousness. If anything, the specific reference to intentional or knowing with respect to infliction of serious physical injury and not with respect to the use of a dangerous instrument weakens, rather than strengthens, appellant's argument.

Furthermore, this court in *State v. Carrillo,* 128 Ariz. 468, 626 P.2d 1100 (App.1980), upheld the trial court's refusal to instruct the jury that the vehicle must be aimed at the victim before the jury could find the defendant guilty of assault using a deadly weapon. Here, as in *Carrillo,* the particular use of the automobile made the automobile a dangerous instrument; also here, as in *Carrillo,* the trial court correctly rejected the argument that the defendant must actually intend to use the automobile as a deadly weapon before there can be a finding of dangerousness.

■ The use of an automobile in the commission of a crime does not automatically trigger the provisions of A.R.S. §§ 13–604(F) and 13–604(K) to enhance punishment. The automobile qualifies as a dangerous instrument under the provisions of A.R.S. § 13–105(7) when it is used under circumstances that are "readily capable of causing death or serious physical injury."

It is the opinion of this court that an automobile, as in this case, when it is driven by an intoxicated person at a high rate of speed in a densely populated area qualifies as a dangerous instrument and triggers the use of the enhanced punishment provisions of A.R.S. §§ 13–604(F) and 13–604(K).

The conviction and sentence imposed are affirmed.

KLEINSCHMIDT, Acting P.J., and CONTRERAS, C.J., concur.