799 P.2d 888

**STATE of Arizona, Appellee,**

**v.**

**Jose Salvador GARCIA, Appellant.**

**No. 1 CA–CR 89–326.**

Court of Appeals of Arizona,
Division 1, Department B.

Sept. 20, 1990.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., and Vicki Gotkin Adler, Asst. Atty. Gen., Phoenix, for appellee.

Richard D. Gierloff, Phoenix, for appellant.

## OPINION

VOSS, Presiding Judge.

█ Defendant was convicted by a jury of aggravated assault, a dangerous felony; driving under the influence (DUI); and, driving with a blood-alcohol content (BAC) of .10% or above, class 1 misdemeanors. He was sentenced to the presumptive term of seven and one-half years imprisonment for aggravated assault and six months incarceration for each misdemeanor. All sentences were ordered to run concurrently.[1] On appeal, he claims that:

---

1. The trial court ordered the misdemeanor jail sentences to run concurrently with defendant's term of imprisonment. This is improper. *See* A.R.S. §§ 13–701 and –707; *State v. Harris,* 134

(1) the state failed to present "relation-back" evidence in violation of *Desmond v. Superior Court,* 161 Ariz. 522, 779 P.2d 1261 (1989);

(2) the aggravated assault cannot be a dangerous felony under *State v. Orduno,* 159 Ariz. 564, 769 P.2d 1010 (1989);

(3) the prosecutor improperly argued to the jury that the charge against defendant was evidence; and

(4) he received ineffective assistance of counsel.

For the reasons below, we affirm.

## FACTS

The defendant met with three acquaintances at a bar sometime after 5:00 p.m. From that time until approximately 8:00 p.m., the defendant and his party ordered fifteen "shots" of liquor and several rounds of beer. By his own admission, defendant consumed at least two, twenty-four ounce cans of beer and one shot of liquor. Other evidence indicated that defendant had consumed more alcohol than he admitted. At one point the waitress, concerned about defendant's condition, asked him if she could call him a cab; he said, "sure", and at her request, gave her his address. She called a cab but defendant left with his friend who told the waitress he was going to drive defendant home. Within minutes after leaving the bar, defendant collided with a disabled vehicle. The disabled vehicle, its warning flashers on, was being pushed by the victim. The impact severed both of the victim's legs. She lost almost two-thirds of her blood volume and her life was threatened.

Ariz. 287, 655 P.2d 1339 (App.1982) (misdemeanor jail term may not be concurrent with prison sentence). The state did not cross-appeal and the error runs in favor of the defendant. Therefore, we do not disturb the sentence. *State v. Dawson,* 164 Ariz. 278, 792 P.2d 741 (1990).

2. Simple assault is a class 1 misdemeanor. A.R.S. § 13–1203(A)(1). However, if the assault causes serious physical injury to another, its classification is elevated to a class 3 felony. A.R.S. § 13–1204(B).

Defendant was transported to the hospital where he consented to withdrawal of his blood. Blood was drawn from the defendant about one hour after the accident. The tests indicated that defendant's BAC was .16%.

▪ Defendant was charged with recklessly causing serious physical injury. The state relied upon the seriousness of the physical injury as the aggravating factor for the assault.[2] The state also alleged the crime was dangerous because it was committed with a dangerous instrument, defendant's automobile, pursuant to A.R.S. § 13–604. Defendant was also charged with driving while under the influence and driving with a BAC of .10% or more. Other facts are recited where necessary to a resolution of the issues raised.

## "RELATION–BACK" EVIDENCE

[3] In *Desmond,* our supreme court addressed the question of whether a defendant's BAC was admissible in evidence, absent an evidentiary foundation relating the BAC at the time of the test to the time of driving.[3] *Desmond* actually involved two cases consolidated for purposes of disposition. In Desmond's case the evidence at his DUI trial established that he had two or three "shots" of liquor between 12:30 a.m. and 1:00 a.m. Twenty minutes later he was stopped by police and arrested. About forty-five minutes later police administered a breath test and determined that Desmond's BAC was .13%. An expert testified that Desmond's BAC at the time of driving "would probably put him somewhere in the order of around a 0.03." *Desmond,* 161 Ariz. at 524–25, 779 P.2d at 1263–64. The state presented no evidence that Des-

3. At issue in this case is the same statute at issue in *Desmond,* section 28–692. We note, however, that the Arizona Supreme Court in *State v. Nance,* 165 Ariz. 286, 798 P.2d 1295 (1990) recently held that relation back evidence is not required under section 28–694 prior to an administrative suspension because section 28–694 does not contain "at the time of the alleged offense" language.

mond's BAC at the time of driving was 0.10% or more.

Over counsel's objections, the jury was instructed that:

If there was at the time of the defendant's driving 0.10 percent or more by weight of alcohol in the defendant's blood, it may be presumed that the defendant was under the influence of intoxicating liquor.

*Id.* at 525, 779 P.2d at 1264.

In the second case, the defendant, Robert W. David, was tried for DUI and driving with a BAC of .10% or more. The evidence at trial established that David was stopped by police at about 1:00 a.m. He was arrested and admitted to consuming three drinks prior to being stopped, and a six-pack of beer earlier that afternoon at about 3:00 p.m. About one hour after he was stopped, David submitted to an intoxilyzer test. The results showed a BAC of .13%. Five minutes later, a second test indicated a BAC of .12%.

Defense counsel attempted to qualify the arresting officer as an expert witness and establish that David's BAC at the time of driving was lower than at the time of the test. The state objected and the objection was sustained. After the state rested, defense counsel moved for a directed verdict on the ground that the state had not presented any testimony relating the test results back to the time of driving. The motion was denied.

In reversing both Desmond's and David's convictions, the court held that:

[E]vidence of a driver's blood-alcohol content taken within a reasonable period of time after arrest is admissible if A.R.S. § 28–692.03 is complied with. Such evidence, however, standing alone, does not make a *prima facie* case of a violation of either subsection A or subsection B of A.R.S. § 28–692. In order for the state to receive the statutory presumption instruction in a charge under subsection A or to make a *prima facie* case under subsection B there must be some evidence relating the BAC back to the time of the arrest.

*Id.* at 528–29, 779 P.2d at 1267–68.

In reaching this result, the court stated that the intoxilyzer test is usually administered about one hour after a driver is stopped and arrested. "If the BAC is falling at the time the test is administered, the reading will be less than what the BAC was at the time the driver was stopped." On the other hand, "if the BAC is rising, the reading will be greater than the BAC at the time the driver is stopped." Finally, the court stated that, "in some instances, the BAC will rise after the driver is stopped, peak and then recede, producing a BAC that is the same as the BAC at the time the driver was stopped." *Id.* at 527, 779 P.2d at 1266. Therefore, the supreme court held that there can be no presumption that a driver's BAC at the time of driving is as high as his BAC taken an hour later. The supreme court specifically disapproved a statement to the contrary in *Logan v. Brown,* 151 Ariz. 96, 100–01, 725 P.2d 1130, 1134–35 (App.1986).

The *Desmond* court did emphasize that a driver's BAC at the time of the test is relevant evidence in determining the BAC at the time of arrest. "For example, a reading of 0.20, twice the presumptive level of 0.10, taken an hour after arrest will be strong evidence that the defendant was driving with a reading of more than 0.10." 161 Ariz. at 527, 779 P.2d at 1266. The court stated that the proper procedure to use BAC when no relation-back evidence is presented, is to admit the test result which indicates the presence of alcohol in the blood, but not the actual percentage of alcohol in the blood. The court cautioned, however, "this does not mean ... that such evidence *standing alone* is sufficient to obtain a conviction under either subsection A or B of A.R.S. § 28–692." *Id.* at 528, 779 P.2d at 1267.

In Desmond's case, the court stated there was sufficient evidence of impaired driving to go to the jury, even though the state's expert testified Desmond's BAC was only .03% at the time of driving. However, the court stated that because there

was no expert testimony that the BAC at the time of driving was .10% or more, there could be no presumption that he was driving under the influence of intoxicating liquor "at that time." Therefore, the trial court's instruction on the presumption was erroneous and required reversal.

The court reached the same result concerning the conviction under subsection A for David and further held that because there was no testimony relating David's BAC at the time of the test back to the time of driving, there was "insufficient evidence to establish a *prima facie* case of a violation of subsection B". The court reversed the conviction.

### Application of Desmond to the Present Case.

In this case, the state argues, and we agree, that "some evidence" was presented which related defendant's BAC at the time of the test to the time of driving. We therefore find no error. The uncontroverted evidence in this case was that defendant had been drinking steadily from approximately 5:00 p.m. until 8:00 p.m. During the examination of the state's expert witness, the state attempted to establish the defendant's BAC at the time of driving hypothetically. The defendant objected and the trial court sustained the objection. The trial court indicated to the state that unless it avowed it would present proof of the facts recited in the hypothetical, it would not permit this line of questioning. The state thereafter avowed it would present proof of the facts stated in the hypothetical. Based on the line of questioning, later followed by the presentation of evidence to support the facts, the expert testified that a one-hundred-and-sixty-pound male would eliminate approximately .02% of alcohol per hour. The expert testified that if this individual's last drink was approximately one hour before the accident, the individual would have eliminated approximately .02%. Therefore, at the time of the driving, defendant's BAC would have been .18%. The prosecutor then asked:

> Now, there is one factor we are not talking about yet. And that is the possibility that the defendant absorbed some alcohol that he had drunk before the collision but that didn't get into his blood system until after the collision. Assuming that the defendant stopped drinking at approximately 8:00 o'clock, and assuming that the only food the defendant had to drink [sic] on that evening was a quarter of a $6.00 appetizer tray between 6:30 and 6:45, and assuming that the defendant was drinking at a relatively steady pace throughout the evening, as opposed to chug-a-lugging right before he got into his car, what sort of impact could there be from this absorptive area?

\* \* \* \* \* \*

> THE WITNESS: The most—if its relatively an empty stomach, most of the alcohol will be absorbed, or more than half the alcohol will be absorbed the first 20 minutes. Complete absorption will take approximately an hour. So if his last drink was right before the accident, we could give the benefit of the doubt and subtract that last drink. One drink would be equal to a .02 percent for a 160–pound person, male. So we subtract the .18 minus the .02, so the person would be at approximately a .16 at the time of the accident or higher.

We hold that the expert's testimony together with the evidence presented satisfies the requirement in *Desmond* to present "some evidence" relating defendant's BAC at the time of the test to the BAC at the time of driving. Therefore it was not error for the court to instruct the jury on the presumption found in A.R.S. § 28–692(E)(3). Furthermore, the testimony and the evidence established a *"prima facie"* case of a subsection B violation.

### AGGRAVATED ASSAULT, A DANGEROUS FELONY UNDER ORDUNO

In *Orduno,* our supreme court considered whether the operation of a motor vehicle in a DUI case could also be deemed the use of a dangerous instrument for sentence enhancement purposes under A.R.S. § 13–604(F). The court held that it could

not because the sentencing enhancing factor—the vehicle—was a necessarily included element of the offense. The court stated:

> In the present case, the state does not seek to enhance punishment because the defendant committed the offense with a dangerous instrument that happened to be a motor vehicle. Rather, the state is seeking to use an essential and necessary element of the crime with which defendant is charged, i.e., the operation of a motor vehicle, as the sole factor to enhance his sentence under A.R.S. § 13–604(F).

*Orduno*, 159 Ariz. at 566, 769 P.2d at 1012.

In reaching this result, the court specifically stated that "in the DUI context, we hold that the motor vehicle the defendant is convicted of operating while intoxicated cannot also be characterized as a 'dangerous instrument.'" *Id.* at 567, 769 P.2d at 1013. Defendant urges this court to extend *Orduno* to other felonies where a DUI is involved. He argues that his aggravated assault conviction should not be a dangerous offense because the dangerous instrument, his automobile, was an element of DUI. We reject this argument. *Orduno* very specifically limited its holding to DUI convictions. The court left intact prior cases which held that the use of an automobile can support an allegation of dangerousness to enhance the punishment for various other felonies. *Orduno*, 159 Ariz. at 566, 769 P.2d at 1012. Many cases have held that an automobile may be considered a dangerous instrument for purposes of A.R.S. § 13–604(F) and (G). *See, e.g., State v. Cocio*, 147 Ariz. 277, 709 P.2d 1336 (1985) (manslaughter); *State v. Woodall*, 155 Ariz. 1, 744 P.2d 732 (App.1987) (second degree murder); *State v. Venegas*, 137 Ariz. 171, 669 P.2d 604 (App.1983) (negligent homicide); *State v. Carrillo*, 128 Ariz. 468, 626 P.2d 1100 (App.1980) (aggravated assault). *See also* annotation, *Automobile as Dangerous or Deadly Weapon Within Meaning of Assault or Battery Statute*, 89 A.L.R.3rd 1026. In fact, in *Orduno* the court stated, "a motor vehicle in the hands of a drunk driver is, by defini-

tion, a dangerous instrument." 159 Ariz. at 566, 769 P.2d at 1012.

Aggravated assault can be committed in a number of different ways. Here, the instrumentality that was used in the commission of the aggravated assault was an automobile. The fact that this automobile was also an element of DUI does not bar its use to enhance the sentence for aggravated assault. Our courts have held on numerous occasions that there is no double jeopardy or double punishment prohibition against using an object, such as a gun, both to upgrade the degree of a crime and to enhance punishment. *See State v. Tresize*, 127 Ariz. 571, 623 P.2d 1 (1980) (not double jeopardy to use a deadly weapon both to classify the crime as a more serious felony and to enhance the sentence); *State v. Bly*, 127 Ariz. 370, 621 P.2d 279 (1980) (not double jeopardy or double punishment to consider an element of the crime for more than one purpose when determining punishment); *State v. Rodriguez*, 126 Ariz. 104, 612 P.2d 1067 (App.1980) (not double punishment for gun to support both underlying crime and enhanced sentence).

In the present case, the use of the automobile was not a statutory element of the underlying offense, and we decline defendant's invitation to extend *Orduno* to such a case.

■ Defendant next argues that he was not liable as a dangerous offender because his conduct was not intentional or knowing, but reckless. This argument was rejected in *Venegas*. There, appellant argued that an offense could not be dangerous by use of a deadly weapon or dangerous instrument unless the use of that deadly weapon or dangerous instrument was made intentionally or knowingly. The court rejected this argument.

> However, appellant fails to suggest any logical reason for requiring that a dangerous instrument be used intentionally or knowingly in order to establish the dangerous nature of the felony, when the statute itself [A.R.S. § 13–604(F)] does not specify that the dangerous instrument be used intentionally or knowingly, and the statute does specify that inflic-

tion of serious physical injury upon another be done intentionally or knowingly before there can be a finding of dangerousness. If anything, the specific reference to intentional or knowing with respect to infliction of serious physical injury and not with respect to the use of a dangerous instrument, weakens, rather than strengthens, appellant's argument. *Venegas*, 137 Ariz. at 175, 669 P.2d at 608.

## PROSECUTOR'S ARGUMENT TO THE JURY THAT THE CHARGE AGAINST DEFENDANT WAS EVIDENCE

■ Defendant argues that the prosecutor improperly argued to the jury that the charge against the defendant was evidence. No objection was made to these remarks at trial. However, defendant claims they are so egregious as to constitute fundamental error, which can be raised for the first time on appeal. The state argues that, taken in context, the prosecutor's remarks do not amount to prosecutorial misconduct. Furthermore, even if the remarks were erroneous, the state argues they were not fundamental error. We agree with the state.

The prosecutor argued to the jury in part:

> Just use your common sense. That's all you need. If you use your common sense in this case, you are going to come up with the right decision.
>
> Now, I am going to go through some things that I think make common sense, and many of you may have thought of them already. If you did, please apologize—I mean, please accept my apology. The problem is, I think this is a serious case and its worth us spending some extra time with it.
>
> \* \* \* \* \* \*
>
> Another fact that you are going to be thinking about is: Was the defendant's driving influenced by alcohol?
>
> What's a lousy way to find out if a person's driving was influenced by alcohol? *Charge him with a crime and then ask him.* What answer are you going to get 99 or 100 times out of 100? 'No, my driving wasn't affected.' They

have a reason to say that. They have a bias.

> What's a good way? Well first of all, you look at the defendant's main objective. It was to get from point A, the bar, to point B, his home. Was he able to accomplish even his simple main objective on June 30th? Huh-uh. Pretty strong evidence that he was affected by the alcohol that he had to drink.
>
> What's another good way? Get the person in question and draw some blood from their system, give it to an expert who has got a whole lot of education in testing blood for alcoholic content, and you get figures.
>
> \* \* \* \* \* \*
>
> Another factor you are going to want to be wrestling with is: Was alcohol related in any way to the collision?
>
> What's a lousy way to answer that question? A lousy way to answer that question is to ask the Defendant or the man he paid to defend him, his attorney—who has done a good job, by the way. But that's a lousy way to answer that question.
>
> What is a good way to answer that question. Well, you look to an expert, an expert who doesn't have any personal stake in this case, an expert who is familiar with the common symptoms of alcohol intoxication.

Taken in context, the prosecutor's remarks were simply an argument to the jury about how to view or evaluate the evidence presented at trial. The prosecutor's argument to the jury on how to evaluate the evidence was prefaced with a remark by the prosecutor that the evidence presented questions of fact which were to be determined by the jurors. As to the specific remarks complained of by defendant, the prosecutor argued to the jury that when evaluating the evidence, it could consider bias or motive. He then suggested the defendant had a bias.

■ The general criteria for determining whether remarks by the prosecutor in a criminal case are so objectionable as to require reversal are whether the remarks called to the attention of the jury matters it

would not be justified in considering in order to arrive at its verdict and whether the jury, under the circumstances of the case, was probably influenced by those remarks. *State v. Gonzales,* 105 Ariz. 434, 437, 466 P.2d 388, 391 (1970) (quoting *Sullivan v. State,* 47 Ariz. 224, 55 P.2d 312 (1936)). Wide latitude is given in closing arguments, and counsel may comment on and argue all justifiable inferences which can reasonably be drawn from the evidence introduced at trial. *State v. Woods,* 141 Ariz. 446, 454, 687 P.2d 1201, 1209 (1984). Counsel may not argue to the jury extraneous matters that were not or could not be received in evidence. *State v. Neil,* 102 Ariz. 299, 300, 428 P.2d 676, 677 (1967).

In the present case, the prosecutor did not improperly argue to the jury. He did not invite the jury to consider the charges against defendant as evidence. Even if the prosecutor's remarks could be construed as error, under the circumstances of this case, it cannot be said that the jurors were influenced by the remarks. The prosecutor's statements, in the context of the entire argument in this case, did not affect the jury's ability to judge the evidence fairly. Even if the remarks could be construed as an argument to the jury that the defendant was guilty merely because he was charged, reversal would not be required. *See United States v. Sherlock,* 865 F.2d 1069 (9th Cir.1989) (prosecutor incorrectly suggested that defendants were guilty because they were being prosecuted, but statement, in context, did not require reversal because prosecutor's misconduct did not affect the jury's ability to judge the evidence fairly). The jury was instructed that the charges against the defendant were not evidence; that what the lawyers said was not evidence, and that defendant was presumed innocent. The state's case against the defendant was corroborated in large part by civilian witnesses with no apparent motive or bias. The cocktail waitress testified that the defendant and his party ordered $72.00 worth of alcoholic beverages. A member of the defendant's party testified that defendant consumed at least two, twenty-four ounce cans of beer and two "shots" of liquor. By his own admission, defendant had consumed at least two, twenty-four ounce cans of beer and one "shot" of liquor. Other evidence indicated that four rounds of one-ounce "shots" had been ordered for the defendant's party. The facts surrounding the circumstances of the accident were basically uncontroverted. Thus, even if the prosecutor's remarks were erroneous, no objection was made and we cannot find fundamental error.

## DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that trial counsel was ineffective because he failed to move to suppress the blood sample taken from him at the hospital. He argues that there is nothing in the record to indicate that the defendant's consent, executed at the hospital, was voluntary.

Recently, in *State v. Valdez,* 160 Ariz. 9, 15, 770 P.2d 313, 319 (1989), the supreme court held that before the appellate court will consider an ineffectiveness assistance of counsel claim, defendants must present the question to the trial court pursuant to Rule 32, Arizona Rules of Criminal Procedure. In *State v. Carver,* 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989), the supreme court stated:

> We will not reverse a conviction on ineffective assistance of counsel grounds on direct appeal absent a separate evidentiary hearing concerning counsel's actions or inactions. Only where we may clearly determine from the record that the ineffective assistance claim is meritless will we elect to consider the issue on direct appeal.

In this case, the defendant has not presented this issue to the trial court by way of Rule 32 and we decline to address the merits of his claim.

CLABORNE and TAYLOR, JJ., concur.