# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2205

_____

United States of America,　　　　　　 *
　　　　　　　　　　　　　　　　　 *
　　　　　　 Plaintiff-Appellee,　　　 *
　　　　　　　　　　　　　　　　　 *　 Appeal from the United States
　　 v.　　　　　　　　　　　　　 *　 District Court for the
　　　　　　　　　　　　　　　　　 *　 Eastern District of Missouri.
Timothy G. Ossana,　　　　　　　　 *
　　　　　　　　　　　　　　　　　 *
　　　　　　 Defendant-Appellant.　 *

_____

Submitted: January 14, 2011
Filed: April 22, 2011

_____

Before MURPHY, HANSEN, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Timothy G. Ossana challenges the sentence he received after pleading guilty to being a felon in possession of a firearm. He specifically challenges the district court's calculation of a base offense level pursuant to U.S. Sentencing Guideline § 2K2.1(a)(4)(A), which applies when a defendant in unlawful possession of a firearm has a prior felony conviction for a "crime of violence." Ossana argues the government failed to establish that a prior Arizona conviction for aggravated assault qualified as a crime of violence. We reverse and remand for resentencing.

I.


In Ossana's presentence investigation report, the probation office recommended a base offense level of twenty pursuant to U.S.S.G. § 2K2.1(a)(4)(A) because Ossana had obtained a prior conviction for a "crime of violence." Without a prior conviction for a crime of violence, the base offense level would have been fourteen. See U.S.S.G. § 2K2.1(a)(6). In support of its recommendation, the probation office recited a conviction for "aggravated Assault, Deadly Weapon/Dangerous Instrument, Superior Court, Pima County, Arizona Docket No. CR-62031."[1] Prior to his sentencing hearing, Ossana objected to several paragraphs of the PSR including the paragraph listing the Arizona offense and, by reference, the paragraph stating the prior offense qualified as

---

[1]As discussed more fully below, the prior conviction at issue was for violating Ariz. Rev. Stat. § 13-1204 which provides, in relevant part:

A.   A person commits aggravated assault if the person commits assault as prescribed by § 13-1203 under any of the following circumstances:

. . .

2.   If the person uses a deadly weapon or dangerous instrument.

The underlying statutory section for assault, incorporated by reference within section 13-1204 is Ariz. Rev. Stat. § 13-1203. Section 13-1203 may be violated in several distinct ways:

A.   A person commits assault by:
1.   Intentionally, knowingly or recklessly causing any physical injury to another person; or
2.   Intentionally placing another person in reasonable apprehension of imminent physical injury; or
3.   Knowingly touching another person with the intent to injure, insult or provoke such person.

a crime of violence. Ossana argued the base offense level should be fourteen rather than twenty, and he cited a document from the state-court record in which a judge had indicated the offense was "NONDANGEROUS; NONREPETITIVE." In addition, Ossana claimed he was appealing the state conviction and the result of the appeal could impact his "offense level as well as his criminal history category." The government made no objections to the PSR. The probation office responded to Ossana's objection, stating no appeal had overturned the conviction, and "the conviction outlined in paragraph 59 for Aggravated Assault, Deadly Weapon/Dangerous Instrument, qualifies as a crime of violence pursuant to Section 4B1.2(a) and Application Note 1" based on "the elements of the offense."

At the sentencing hearing, the parties addressed the issue of whether the Arizona conviction for Aggravated Assault qualified as a violent felony, but only in terms of Ossana's general objection. The only discussion of the state-court record focused on Ossana's observation that the state-court judge's written judgment classified the offense as "NONDANGEROUS, NONREPETITIVE." The parties did not discuss the elements of the underlying Arizona statutory sections at issue, Ariz. Rev. Stat. §§ 13-1203 (simple assault) & 13-1204 (aggravating conditions). In fact, it appears section 13-1203 was not before the court.[2] The government submitted an exhibit containing state records, as discussed below, and Ossana did not object to the admission of these records.

On appeal to our court, Ossana for the first time presents more fully articulated arguments regarding the applicability of section 2K2.1(a)(4)(A). He renews his

---

[2]To the extent Ossana bases his arguments on the government's failure to provide a copy of the relevant state statute to the district court, we reject his arguments. We previously have held such an omission to be harmless, and, at any rate, our review of the issue involving the underlying state statute is *de novo*. See United States v. Webster, ___ F.3d ___, 2011 WL 710202, No. 10-1172, at *1 n.2 (8th Cir. Mar. 2, 2011).

reference to the state-court materials identifying the offense as "NONDANGEROUS, NONREPETITIVE." In addition, he discusses Ariz. Rev. Stat. §§ 13-1203 & 1204 in detail, characterizing the underlying assault statute, section 13-1203, as over-inclusive because it encompasses different offenses, only some of which satisfy the generic elements of assault as relevant for federal enhancement and recidivist provisions. In particular, he argues section 13-1203 defines assault to include various actions, one of which may be satisfied with a mens rea of mere recklessness (if an actual injury results), see Ariz. Rev. Stat. § 13-1203(A)(1) ("Intentionally, knowingly or recklessly causing any physical injury to another person"), and another one of which may be satisfied with mere insulting or provoking contact (without a requirement for a resultant injury, violent contact, or threats of violence), see id. (A)(3) ("Knowingly touching another person with the intent to . . . insult or provoke such person"). He presents additional arguments related to the scope of permissible materials for use in applying the modified categorical approach, and the need to look beyond the state's labels for its offenses to examine the elements of the underlying state offenses.

The government counters that we need look no further than the state's label of "aggravated assault" for the underlying offense. In the alternative, the government argues state records show that Ossana was convicted pursuant to a subsection of the state statute that qualifies as a crime of violence because it has as an element the use or threatened use of force or because it qualifies as a crime of violence pursuant to the "residual clause." We address these arguments below.

II.

The guideline provision for determining Ossana's base offense level adds six levels to the base offense if the defendant has a prior conviction for a "crime of violence." U.S.S.G. § 2K2.1(a)(4)(A). Section 2K2.1 does not itself define the term "crime of violence," but the commentary to this section states, "'Crime of violence' has

-4-

the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." Section 4B1.2(a), in turn, provides:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
>> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

In addition, Application Note 1 of the Commentary to section 4B1.2 lists several example crimes that qualify as crimes of violence, including, among others, "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses . . . ."

The government first argues that, given the listing of "aggravated assault" in the Commentary to section 4B1.2, we need look no further than the name Arizona chose to place on the statute of conviction, "Aggravated Assault," or that appears on the written judgment, "Aggravated Assault/Deadly Weapon." We disagree. In Taylor v. United States, 495 U.S. 575 (1990), when addressing the definition of the term "burglary" as used in 18 U.S.C. § 924(e)(2)(B)(ii),[3] the Court held Congress intended the term to have one uniform definition—a definition comporting with "the generic sense in which the term is now used in the criminal code of most States." Id. at 598. Importantly, in reaching this conclusion, the Supreme Court rejected the argument that courts could simply look to "whether the State of [the] prior conviction happened to call that conduct 'burglary.'" Id. at 591. We have recognized that this rule of Taylor

---

[3]For present purposes, we treat authority interpreting the term "violent felony" from the career offender statute, 18 U.S.C. § 924(e), as applicable in interpreting the similarly defined term "crime of violence" from U.S.S.G. § 4B1.2(a). See United States v. Vinton, 631 F.3d 476, 484 (8th Cir. 2011).

also applies to the definitions of terms used in section 4B1.2 and the listed offenses from the commentary to section 4B1.2. See United States v. Malloy, 614 F.3d 852, 857 (8th Cir. 2010) (recognizing that courts "cannot rely solely on the label given to a particular crime when deciding whether it qualifies as a crime of violence"); United States v. Ross, 613 F.3d 805, 809 (8th Cir. 2010) ("The guidelines typically establish federal definitions for the operative terms rather than incorporate wholesale the labels used by state law."); see also, United States v. Palomino Garcia, 606 F.3d 1317, 1329 (11th Cir. 2010) ("Our sister circuits have . . . uniformly rejected the argument advanced by the government here that the label the state happens to attach to the crime of conviction determines whether it is a crime of violence warranting an enhancement under the Guidelines.").[4]

Our first step in applying the crime-of-violence definition of section 4B1.2(a), then, is to determine whether to apply the categorical or modified categorical approach. Pursuant to the categorical approach, we are concerned only with the fact of a prior conviction and the statutory elements of the underlying offense. See Vinton, 631 F.3d at 484–85. We are not concerned with the particular manner in which Ossana committed the offense or the specific details of his prior criminal act. Id. If, however, the underlying statute encompasses multiple different crimes, only some of which qualify as crimes of violence, we apply the modified categorical approach and examine a limited class of record materials to determine which actual crime Ossana committed. Id. In applying either approach, we examine the elements of the underlying state offense to determine if the conviction *necessarily* involved "the use,

---

[4]While we reject the government's argument in this regard, we are sympathetic toward the district court in this particular instance and understand why the manner in which the parties presented the issue resulted in the absence of an express discussion of the elements of the offense. Here, without specific arguments from the parties detailing the elements of Ariz. Rev. Stat. §§ 13-1203 & 1204, it is not apparent from the state's labels for the offenses that the statutory definition might fail to comport with the generic definition for aggravated assault.

attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1), otherwise encompassed the generic definition of one of the enumerated offenses in Application Note 1 of the Commentary to section 4B1.2, or fits within the residual clause of section 4B1.2(a)(2).

Here, the offense of conviction, Ariz. Rev. Stat. § 13-1204, requires proof of a violation of the elements of Ariz. Rev. Stat. § 13-1203, the underlying simple assault statute. Section 13-1203 can be violated with any degree of contact by "[k]nowingly touching another person with the intent to . . . insult or provoke such person," id. at 1203(A)(3). As per Johnson v. United States, 130 S. Ct. 1265, 1270–71 (2010), such contact does not qualify as the use of physical force because it is not violent force. Id. (rejecting the argument that "physical force" as used in 18 U.S.C. § 924(e)(2)(B)(i) encompasses all types of contact and limiting its definition to violent force of the type capable of causing physical injury). Accordingly, a conviction pursuant to this subdivision of the statute would not qualify as a crime of violence pursuant to section 4B1.2(a)(1). Because the degree of contact required is undefined, we believe this subdivision of the Arizona statute also fails to qualify as a crime of violence under the residual clause because it could be wholly dissimilar in kind to offenses listed in section 4B1.2(a)(2).

Further, pursuant to subsection (A)(1) of the Arizona statute, it is possible to commit assault with merely reckless behavior if an actual physical injury results. Ariz. Rev. Stat. § 13-1203(A)(1) ("Intentionally, knowingly or recklessly causing any physical injury to another person"). Arizona's courts have applied this statutory subdivision to obtain aggravated-assault convictions stemming from reckless driving where the defendant's action caused an injury and the defendant's conduct was merely reckless. See State v. Williams, 854 P.2d 131, 132 (Ariz. 1993) (affirming a conviction pursuant to sections 13-1203 & 1204 based upon reckless driving and labeling the offense "aggravated assault for recklessly causing physical injury using a dangerous instrument," but reversing as to the application of a different penalty

enhancement); State v. Yingst, No. 1 CA-CR 07-0034, 2008 WL 3856354, *2 (Ariz. Ct. App. Mar. 11, 2008) (affirming a conviction under the same statutory sections based upon reckless driving resulting in injury); State v. Garcia, 799 P.2d 888, 893 (Ariz. Ct. App. 1990) (same).

Our court has not resolved the issue of whether a crime involving a mens rea of mere recklessness may qualify as a crime of violence. See United States v. Jones, 574 F.3d 546, 551 (8th Cir. 2009) ("[T]he Eighth Circuit has not held that crimes with a mens rea of recklessness cannot constitute violent felonies, and this panel need not address this issue here."). Accordingly, before turning to application of the modified categorical approach, we first must address this open question to determine if there are two or merely one means of violating the underlying statute in this case without committing a crime of violence.

In Begay v. United States, 553 U.S. 137 (2008), the Supreme Court interpreted the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii) and emphasized that qualifying crimes must demonstrate a defendant's propensity towards "purposeful, violent, and aggressive conduct," id. at 144–45 (internal quotations marks omitted), such that the prior conviction shows it is "more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." Id. at 145. Several circuits have interpreted Begay as excluding crimes involving the mens rea of recklessness. See United States v. Jenkins, 631 F.3d 680, 685 (4th Cir. 2011) ("Thus, under Begay and Chambers[ v. United States, 555 U.S. 122 (2009)], the Resisting Arrest Offense is not a 'crime of violence' for purposes of the Career Offender Enhancement only if it can be committed either negligently or recklessly—as opposed to intentionally or purposefully."); United States v. Holloway, 630 F.3d 252, 261–62 (1st Cir. 2011); United States v. McFalls, 592 F.3d 707, 716 (6th Cir. 2010); United States v. Smith, 544 F.3d 781, 785–86 (7th Cir. 2008); United States v. Gray, 535 F.3d 128, 131–32 (2d Cir. 2008). In fact, the Ninth Circuit has held that the specific Arizona statute at issue in the present case is overinclusive because the subdivision criminalizing

reckless injury is not a crime of violence. See United States v. Esparza-Herrera, 557 F.3d 1019, 1024–25 (9th Cir. 2009). Further, in at least one reported case, the government withdrew its argument that "reckless conduct, standing alone" could qualify as a crime of violence pursuant to the residual clause, representing, contrary to the government's present position, that the Department of Justice had "clarified its position." See United States v. Johnson, 587 F.3d 203, 210 (3d Cir. 2009) (declining to resolve the question of recklessness based upon the government's withdrawal of the issue where the underlying offense was simple assault).[5] The parties have cited, and we have identified, no circuit-level cases post Begay in which a court found an offense qualified as a violent felony or crime of violence where the mens rea for the offense was mere recklessness and where there were no further qualifications to suggest purposeful, violent, or aggressive conduct.[6]

That is not to say we believe this issue presents an easy question. Before Begay, the Supreme Court in Leocal v. Ashcroft, 543 U.S. 1 (2004), while interpreting the "crime of violence" definition for 18 U.S.C. § 16, expressly declined to address the question of recklessness. 574 U.S. at 13 ("This case does not present us with the question whether a state or federal offense that requires proof of the *reckless* use of force against a person or property of another qualifies as a crime of violence under 18

---

[5]It is not clear why the Department of Justice has adopted the opposite position in the present case or if the Third Circuit's reference to the Department of Justice encompassed only the position of a local office.

[6]We qualify and limit our holding today to the crimes such as the crime at issue which encompasses the unadorned offense of reckless driving resulting in injury. This crime is distinct from other crimes of recklessness such as reckless flight from a police officer, see, e.g., United States v. Ethingor, 388 F. App'x 858, 862 (11th Cir. 2010), where other elements of the offense (eluding an officer) involve purposeful conduct arguably similar to listed offenses and likely to incur pursuit and potentially violent conflict with an officer. Given the nature of the offense under examination in this case and the dissimilarity to listed offenses in the residual clause of section 4B1.2(a)(2), further analysis under the residual clause is unnecessary.

U.S.C. § 16.").  And in Begay, Justice Scalia concurred separately in the judgment and rejected the majority's mode of analysis, noting that "one of the enumerated crimes [in § 924(e)(2)(B)(ii)]—the unlawful use of explosives—may involve merely negligent or reckless conduct."  Begay, 553 U.S. at 152; accord Jones, 574 F.3d at 551 (declining to address this issue).  We believe this reference illustrates a difficulty with this entire field of inquiry: while the criminal act the concurrence references may be conditioned upon mere recklessness, the underlying use of explosives itself would appear in all qualifying instances to be intentional or purposeful and inherently highly dangerous  as contrasted with the more safe activity of driving.  In any event, the referenced crime appears to be a crime of a different nature than the crime under examination today, and the reference was not from a holding of the Court.

In support of its position, the government cites a pre-Begay case from the Fifth Circuit, and a pre-Begay, unpublished Sixth Circuit opinion that relies on the Fifth Circuit's case to argue such crimes may qualify as crimes of violence.  See United States v. Mungia-Portillo, 484 F.3d 813, 817 (5th Cir. 2007) (interpreting an assault statute similar to Arizona's that encompassed reckless injury and holding the offense to be a crime of violence); United States v. Mendoza-Mendoza, 239 F. App'x 216, 221–22 (6th Cir. 2007).  While we do not suggest that the Fifth Circuit has amended its approach post-Begay, we find no discussion of this exact issue or express holding affirming this position post-Begay.  Further, the Sixth Circuit, as cited above, has expressly rejected the argument that a crime of violence may stem from a mens rea of mere recklessness.  McFalls, 592 F.3d at 716.

We believe the apparent uniformity of views among the circuits to address this issue post-Begay militates in favor of adopting the same position.  In addition, we find the other courts' reasoning to be persuasive, especially as relevant to the Arizona statute under examination today.  The Second Circuit, in Gray, for example, found it compelling that the Supreme Court in Begay discussed a "recklessness" crime that did not qualify as a crime of violence to make a distinction between crimes that do and do

not exhibit the type of deliberate violent behavior associated with crimes of violence. The court in Gray stated:

> Begay places a strong emphasis on intentional-purposeful-conduct as a prerequisite for a crime to be considered similar in kind to the listed crimes. The Court was concerned that, without this requirement, the statute would apply to a large number of crimes which pose a great degree of risk to others but are far removed "from the deliberate kind of behavior associated with violent criminal use of firearms."

535 F.3d at 131–32 (quoting Begay, 553 U.S. at 147). The Second Circuit continued its discussion in a footnote, stating:

> The crime of reckless tampering with consumer products was offered as an example to illustrate this point. See Begay, 128 S. Ct. at 1587. A person is guilty of this offense if he or she, "with reckless disregard for the risk that another person will be placed in danger of death or bodily injury and under circumstances manifesting extreme indifference to such risk, tampers with any consumer product." 18 U.S.C. § 1365(a).

Id. at 132 n.3. We also find the Supreme Court's own discussion on this exact point to be particularly persuasive. The Court distinguished crimes that show a mere "callousness toward risk" from crimes that "also show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger." Begay, 553 U.S. at 146. The Court continued:

> Were we to read the statute without this distinction, its 15-year mandatory minimum sentence would apply to a host of crimes which, though dangerous, are not typically committed by those whom one normally labels "armed career criminals." See, e.g., Ark. Code Ann. § 8-4-103(a)(2)(A)(ii) (2007) (reckless polluters); 33 U.S.C. § 1319(c)(1) (individuals who negligently introduce pollutants into the sewer system); 18 U.S.C. § 1365(a) (individuals who recklessly tamper with consumer products); § 1115 (seamen whose inattention to duty causes serious

-11-

accidents). We have no reason to believe that Congress intended to bring within the statute's scope these kinds of crimes, far removed as they are from the deliberate kind of behavior associated with violent criminal use of firearms.

Id. at 146–47.

Given the Arizona courts' interpretation of the Arizona assault statutes as encompassing reckless driving that results in an injury, it is difficult to see any meaningful distinction between the Court's example crime of recklessly tampering with consumer products, 18 U.S.C. § 1365(a), and the Arizona offense. As such, we hold that a conviction pursuant to Ariz. Rev. Stat. §§ 13-1203 & 1204 involving merely reckless use of a vehicle is not a crime of violence. We believe, in addition, that this same analysis demonstrates the same offense would not be a crime of violence pursuant to the residual clause of U.S.S.G. § 4B1.2(a)(2).

Turning to application of the modified categorical approach, we may look at a narrow category of materials to determine the subdivision of the Arizona statute for which Ossana was convicted. Judicial records qualify for examination, but police reports do not. See Shepard v. United States, 544 U.S. 13, 16 (2005) (sentencing court may not "look to police reports or complaint applications" but may look to "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented"). The government argues we may look to a state presentence investigation report that the government placed into the sentencing record via Exhibit 8, as referenced above. The report at issue, however, does not represent a judicial finding, does not reflect the extent to which Ossana may have admitted to the statements contained in the report, and is silent as to the sources of the statements contained therein. In this context, we may not refer to the report when applying the modified categorical approach. In fact, we recently held that, in applying the modified categorical approach, sentencing courts may not look to factual assertions within

-12-

federal presentence investigation reports—even if the defendant failed to object to the reports—where the source of the information in the reports might have been from a non-judicial source. See United States v. Thomas, 630 F.3d 1055, 1056–57 (8th Cir. 2011) (remanding for resentencing but disallowing further development of the record on remand); United States v. Williams, 627 F.3d 324, 328–29 (8th Cir. 2010) (remanding for resentencing and permitting further development of the record on remand).

Here, all that the Shepard-qualifying materials demonstrate is that the dangerous instrumentality involved in Ossana's Arizona conviction was a vehicle. Qualifying records do not suggest whether any party was injured (as required to permit a conviction based upon a mens rea of recklessness), what Ossana's mens rea may have been, or how precisely Ossana used the vehicle. We cannot assume the absence of a resulting injury (which would eliminate the possibility of a conviction based upon mere recklessness) because the government bears the burden of proof and to make this assumption would be to speculate in a manner adverse to the defendant. We also cannot assume any particular mens rea from among those listed in the state statute.

Because Ossana's conviction was for aggravated assault using a vehicle as a dangerous instrumentality, Ariz. Rev. Stat. § 13-1204, however, we believe the record shows that his underlying violation of the simple-assault statute did not involve the subdivision criminalizing merely insulting or provocative contact as described in section 13-1203(A)(3). Use of a dangerous instrument or deadly weapon is an *express element* of the aggravated assault statute, not merely a label. Further, we find no Arizona authority suggesting it is possible to commit aggravated assault using a dangerous instrumentality or deadly weapon pursuant to section 13-1204 to commit an assault pursuant to the underlying section 13-1203(A)(3) for merely insulting or provocative contact. Rather, it would seem that any arguably non-violent contact of another with a dangerous instrumentality or deadly weapon would place that person

in fear of violent force thereby bringing the offense within a different, qualifying statutory subsection. See Ariz. Rev. Stat. § 13-1203(A)(2) (intentional threats of physical injury). Accordingly, we are able to eliminate the possibility that Ossana's underlying section 13-1203 violation involved nothing more than insulting or provocative touching. Still, Ossana's conviction, like the conviction in Garcia, 799 P.2d at 893, could have been based merely upon reckless driving that resulted in injury. Without resorting to speculation or impermissible materials, the possibility remains that Ossana's conviction was not a crime of violence.[7]

Finally, we note that Ossana's arguments concerning a state-court judge's characterization of the offense as "NONDANGEROUS; NONREPETITIVE" are largely immaterial to our analysis. The modified categorical approach, like the categorical approach, is not concerned with the specific details of how a defendant committed his prior offense or whether a state court or state legislature considered the offense to be violent or dangerous. Our analysis is concerned only with the fact of the conviction and identifying the particular subpart of a statute that the defendant violated. Vinton, 631 F.3d at 484–85.

Given our conclusion, remand is necessary. Our recent cases have indicated that, on remand, it may sometimes be appropriate to allow expansion of the record and may, at other times, be appropriate to remand for resentencing without expansion of the record. Compare Thomas, 630 F.3d at 1056–57, with Williams, 627 F.3d at 329. It seems that our distinction rested upon the clarity of the issue below and whether we

---

[7]Among the materials the government submitted at sentencing was a state presentence investigation report purportedly describing the specific details of Ossana's offense. This document describes a scene in which Ossana backed a car over a police officer's bicycle and fled from the officer when the officer was ordering him to stop. The officer was in close proximity to Ossana's car and broke Ossana's window with a baton in an effort to make Ossana stop. This report does not indicate its sources, and as per Thomas and Williams we may not rely upon it to help determine the subsection of Ossana's offense.

deemed the government's failure of proof at the initial sentencing to be excusable. Here, given the vagueness of Ossana's objections below, we believe it is appropriate to permit the government to expand the sentencing record and permit the use of additional <u>Shepard</u>-qualifying materials (if any exist) at resentencing.

We vacate the sentence imposed by the district court and remand for resentencing.

_____