# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2591
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri |
| Timothy G. Ossana, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: March 13, 2012
Filed: May 17, 2012

_____

Before MELLOY, SMITH, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

In an earlier appeal, we held the government failed to prove a prior Arizona conviction qualified as a crime of violence pursuant to United States Sentencing Guidelines § 2K2.1(a)(4)(A). See United States v. Ossana, 638 F.3d 895 (8th Cir. 2011). We remanded for resentencing and expressly noted the government could expand the record with additional materials consistent with Shepard v. United States, 544 U.S. 13, 16 (2005), to apply the modified categorical approach and determine which subsection of the relevant Arizona statute led to Ossana's prior conviction.

On remand, the government introduced a transcript of a plea colloquy from the underlying Arizona conviction. The district court determined this plea colloquy demonstrated Ossana had been convicted pursuant to a subsection of the Arizona statute that defined a crime of violence. We affirm.

We set forth a detailed recitation of the facts in our prior opinion, Ossana, 638 F.3d at 897–98, and do not repeat them here. The only issue involved in the present appeal is whether the prior conviction involving an overinclusive state statute arose from a subsection of the statute that qualifies as a "crime of violence." The prior conviction was for Aggravated Assault, Ariz. Rev. Stat. § 13-1204, which cross-references Arizona's simple assault statute and sets forth aggravating circumstances, including use of "a deadly weapon or dangerous instrument." Ariz. Rev. Stat. § 13-1204 (A)(2) (cross referencing Ariz. Rev. Stat. § 13-1203). Arizona charged and convicted Ossana citing this aggravator, and the instrument used was a vehicle.

The underlying, cross-referenced assault statute may be violated in several distinct ways:

> A. A person commits assault by:
>    1. Intentionally, knowingly or recklessly causing any physical injury to another person; or
>    2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or
>    3. Knowingly touching another person with the intent to injure, insult or provoke such person.

Ariz. Rev. Stat. § 13-1203.

In the prior appeal, we concluded that, given Arizona's interpretations of its own statute, a conviction pursuant to Section 13-1203(A)(1) involving an actual "injury to another person" but a mens rea of mere recklessness would not qualify as a crime of violence. Ossana, 638 F.3d at 903. We also concluded that a violation of

Section 13-1203(A)(3) involving touching intended to provoke or insult another person would not qualify as a crime of violence. Id. In addition, we discussed the state of the record as to the absence or presence of an injury and as to Ossana's underlying mens rea:

> Here, all that the Shepard-qualifying materials demonstrate is that the dangerous instrumentality involved in Ossana's Arizona conviction was a vehicle. Qualifying records do not suggest whether any party was injured (as required to permit a conviction based upon a mens rea of recklessness), what Ossana's mens rea may have been, or how precisely Ossana used the vehicle. We cannot assume the absence of a resulting injury (which would eliminate the possibility of a conviction based upon mere recklessness) because the government bears the burden of proof and to make this assumption would be to speculate in a manner adverse to the defendant. We also cannot assume any particular mens rea from among those listed in the state statute.

Id. at 903–04.

On remand, it was the government's burden to prove Ossana's prior conviction stemmed from a violation of a subsection qualifying as a crime of violence. To meet this burden, the government had to introduce qualifying state court materials to prove the absence of an injury (thereby eliminating the possibility of a conviction based on mere recklessness which is a qualifying mens rea under the statute only as to the subsection involving actual injury) or to prove that the prior conviction involved proof of a mens rea greater than recklessness.

The government introduced a transcript of the plea colloquy from Ossana's change-of-plea hearing in Arizona State Court. The parties agree that this transcript qualifies as permissible Shepard material for the purpose of analyzing the prior conviction pursuant to the modified categorical approach. The plea colloquy contained the following exchange:

The Court:    Okay. So why don't you go ahead and tell me what happened on or about June 24th, 1998?

Ossana:    Um, okay. On June 23rd, I guess June 24th, I – I was in my vehicle. I was parked in a motel parking lot talking to a friend. He was leaned up against the passenger side of the car. I had a passenger in the car. Two police officers approached me, one ordered me to turn off the vehicle. I asked he why. Um, had I broken the law? He says no, turn it off. And in the meantime, another officer approached the driver's side of the vehicle and asked me to turn the car off and roll down the window. He asked me to roll down the window. I rolled down my window. I asked him what he wanted and he said, I said turn off the car. He started hitting my window with the stick and – a baton, whatever. So I took off my – my car and I ran over his bicycle.

Counsel:    They were bicycle cops, Your Honor. Bike was in back of car . He ran over it at the same time the officer was – had to jump out of the way of the vehicle.

The Court:    You could have run over an officer; right?

Ossana:    Unintentionally. I know it wasn't a smart thing to do.

Based on this colloquy, Ossana argued to the district court that it was not possible to determine whether an injury resulted or what his mens rea might have been. The government suggested Ossana was attempting to collaterally attack his prior conviction by asserting that no subdivision applied. Ossana argued that he was not attempting to collaterally attack his prior conviction; he was merely arguing that the plea colloquy provided an insufficient basis to discern which subsection was involved.

The district court, reviewing the initial record and this new material, disagreed, concluding, "The Court finds that by a preponderance of the evidence, which I believe is the appropriate standard, that . . . the criminal offense to which he pled guilty was subsection two as we have been referring to it." Subsection two refers to

-4-

Ariz. Rev. Stat. § 13-1203(A)(2) and defines a crime of violence, as explained in our prior opinion.

We review de novo the application of the modified categorical approach. United States v. Linngren, 652 F.3d 868, 873 (8th Cir. 2011) ("Consequently, the district court, and now this court on de novo review, must look beyond the fact of conviction . . . and employ the modified categorical approach to determine whether [the] prior conviction rested on the portion of the . . . Statute . . . qualify[ing] for the sentencing enhancement."); United States v. Boaz, 558 F.3d 800, 805 (8th Cir. 2009) ("We have repeatedly held that whether a particular conviction qualifies as a predicate felony for the purpose of § 922(g) is a question of law for the district court."). When reviewing the Shepard-qualifying materials surrounding a prior conviction, we employ the preponderance of the evidence standard to determine the discrete subsection of a criminal statute at issue. United States v. Williams, 664 F.3d 719, 721 (8th Cir. 2011) ("If the government establishes by a preponderance of the evidence that the prior felony conviction was for a crime of violence, then the § 2K2.1(a)(3) sentencing enhancement applies.").

Here, the record shows the officer was in fear of imminent harm — he was forced to jump out of the way of a moving vehicle that ultimately ran over his bicycle. Based upon this fact, it is reasonable to infer that the officer *successfully* jumped from harm's way and was not injured. In the absence of an injury, we must infer the conviction did not stem from a violation of Ariz. Rev. Stat. § 13-1203(A)(1) and therefore must have involved subsection (A)(2).

In the initial appeal, when the plea colloquy was not a part of the record and the details of the offense were unknown, a conclusion as to the presence or absence of injury would have amounted to naked and impermissible speculation. Here, however, the factual description showing that the officer jumped out of harm's way

lifts the finding above the level of mere speculation and supports the reasonable inference that no injury occurred.

It is important to note that, in this case, the applicable standard of proof matters. The finding at issue impacts only the advisory Guidelines range and, as such, requires proof only by a preponderance of the evidence. Id. Also, we do not conduct a review of the state court records in this context and make findings specifically as to the details of the prior offense. Rather, we review the records merely to determine which discrete subsection of the underlying criminal statute the state relied upon to secure the guilty plea. Typically, such an analysis requires little from the reviewing court in terms of inferences or factual determinations.

Occasionally, however, as in this case, it will be necessary to interpret the state court record and make reasonable inferences based upon the Shepard-qualifying materials in order to identify the discrete statutory subdivision at issue. In other cases, the paucity of information in state court records may wholly thwart analysis pursuant to the modified categorical approach. See, e.g., Johnson v. United States, 130 S. Ct. 1265, 1273 (2010) ("It may well be true . . . that in many cases state and local records from . . . convictions will be incomplete. [A]bsence of records will often frustrate application of the modified categorical approach."). Here, although some uncertainty remains as to whether an actual injury resulted from the events described in the plea colloquy, we believe that the record adequately shows by a preponderance of the evidence that no injury occurred. We do not suggest that the limited plea colloquy quoted above would support the same finding beyond a reasonable doubt.

We also note that the government argues Arizona's interpretation of Ariz. Rev. Stat. § 13-1203(A)(2) requires proof only of an intentional act and not proof of a defendant's intent to place a victim in fear of imminent bodily harm. We reject the government's argument as an incorrect interpretation of Arizona law. To support its

position, the government cites <u>Arizona v. Davis</u>, No. 2 CA-CR 2007-0321, 2008 WL 2628944 (Ariz. Ct. App. Div. 2) (unpublished).  <u>Davis</u>, however, stands neither for the proposition that any intentional act suffices to prove the requisite intent nor that intentional acts with vehicles are somehow unique.  Rather, <u>Davis</u> holds merely that the particular use of a vehicle in that case sufficed to show the requisite intent to make a victim fear imminent harm.  <u>Id.</u> at *2.

        We affirm the judgment of the district court.

_____