# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 15-1914

———————————————

Steven Troy Kelly

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

———————

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

———————

Submitted: December 16, 2015
Filed: April 11, 2016

———————

Before WOLLMAN, LOKEN, and BYE, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

Steven Troy Kelly pleaded guilty to conspiracy to distribute 500 grams or more of a mixture and substance containing methamphetamine and 50 grams or more of actual methamphetamine, 21 U.S.C. §§ 841(b)(1)(A), 846, and to being a felon in

possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(2). The district court[1] applied a career-offender sentence enhancement as recommended in the presentence investigation report (PSR), based on Kelly's two prior convictions for violent crimes. Kelly did not directly appeal his sentence. He filed a petition for a writ of habeas corpus seeking to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, claiming that he had been denied his Sixth Amendment right to effective assistance of counsel during sentencing. The district court denied Kelly's petition and granted a certificate of appealability. We affirm.

I.

Kelly was arrested for his involvement in a conspiracy to distribute methamphetamine from California to Iowa. Kelly entered into a written plea agreement and pleaded guilty to the crimes set forth above. The PSR calculated a base offense level of 31 and recommended application of the career-offender enhancement under § 4B1.1 of the U.S. Sentencing Guidelines Manual (Guidelines or U.S.S.G.), for Kelly's two prior felony convictions for crimes of violence. This enhancement raised Kelly's offense level from 31 to 37 and his criminal history category from IV to VI. The two predicate convictions were for robbery in the second degree in May 2000, Iowa Code §§ 711.1, 711.3, and for domestic-abuse assault in January 2011, Iowa Code § 708.2A(3)(b). The PSR also recommended a 3-level downward departure for acceptance of responsibility, which resulted in a total offense level of 34. Based on a total offense level of 34 and a criminal history category of VI, the PSR calculated a Guidelines sentencing range of 262 to 327 months' imprisonment. Without the career-offender enhancement, Kelly's total offense level would have been 28, his criminal history category would have been IV, and his resultant Guidelines sentencing range would have been 110 to 137 months' imprisonment.

_____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

Although represented by counsel at sentencing, Kelly himself requested a continuance, arguing that his 2011 domestic-abuse assault conviction was a misdemeanor, not a felony, conviction. The district court denied Kelly's request, noting that his conviction constituted a felony under the Guidelines because it was punishable by a sentence of more than one year. The district court told Kelly, "You can preserve the issue, so if you want to file a post—an appeal or post-trial motion to reconsider that particular issue and have me issue an order on it, I'll be happy to do it." Kelly's counsel did not object to the calculations in the PSR. Instead, she argued that, in addition to granting the government's motion for substantial assistance under U.S.S.G. § 5K1.1, the court should grant a downward variance to place Kelly's sentence below that of another co-conspirator who had played a more significant role in the conspiracy. She argued that such a variance was necessary "to serve the needs of justice, the needs of the community, the needs of the Defendant and to be fair," noting that the co-conspirator had received a sentence of 176 months.

The district court adopted the PSR's recommendations. It then granted a downward variance of 32 months in light of Kelly's more limited role in the conspiracy; granted the government's motion for substantial assistance, further reducing Kelly's sentence by 86 months; and sentenced Kelly to 144 months' imprisonment, to be followed by five years of supervised release.

Kelly did not directly appeal his sentence. He instead filed a pro se § 2255 petition, alleging that his counsel had rendered ineffective assistance at sentencing by failing to object to the application of the career-offender enhancement. He argued that his prior conviction for domestic-abuse assault did not qualify as a crime of violence under U.S.S.G. § 4B1.2(a), that the grounds for this objection would have been obvious had his attorney conducted a basic search of relevant Eighth Circuit case law, and that because his counsel's failure to object served no tactical purpose, it could be explained only as either ignorance or negligence. The district court denied Kelly's petition without a hearing, noting that the law was "complicated and evolving" at the

time of Kelly's conviction. The court concluded that in light of the unsettled nature of the law, Kelly's counsel was not constitutionally deficient in not raising an objection to the career-offender enhancement. The court granted a certificate of appealability, concluding that Kelly "raised an issue that is adequate to deserve encouragement to proceed further."

## II.

"We review *de novo* the denial of a § 2255 motion and review any underlying factual findings for clear error." Hamberg v. United States, 675 F.3d 1170, 1172 (8th Cir. 2012). We evaluate ineffective-assistance-of-counsel claims using the standard set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." Id. If a defendant fails to establish that counsel's performance was deficient, we need not address whether the defendant suffered prejudice. Id. at 697.

To demonstrate deficient performance, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. "[W]e must 'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" King v. United States, 595 F.3d 844, 853 (8th Cir. 2010) (quoting Ruff v. Armontrout, 77 F.3d 265, 268 (8th Cir. 1996)). Our task is "to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Because our scrutiny of counsel's performance is "highly deferential," there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 687, 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Under § 4B1.1 of the Guidelines, a defendant is a career offender if

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Section 4B1.2(a) defines a crime of violence as follows:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is a burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that represents a serious potential risk of physical injury to another.

We have interpreted the "physical force" element of § 4B1.2(a)(1) as requiring the use of violent force. United States v. Ossana, 638 F.3d 895, 900 (8th Cir. 2011) (citing Johnson v. United States, 559 U.S. 133, 139-41 (2010)). In determining whether a predicate offense was one in which violent force was an element, we generally follow the categorical approach. Id. at 899. Under the categorical approach, we look not at the particular facts giving rise to the challenged conviction but at the statutory elements of the underlying offense. Id. But where a statute is overbroad, one, that is, which encompasses multiple crimes, some of which are non-violent, we apply the modified categorical approach. Id. at 899-900. Under that approach, the court may look at certain documents to determine for which crime the defendant actually pleaded guilty. Shepard v. United States, 544 U.S. 13, 20-21 (2005) (describing permissible documents); see also Ossana, 638 F.3d at 899-900. We then determine whether violent force was a necessary element of that crime. Ossana, 638 F.3d at 899-900.

Iowa Code section 708.2A(3)(b) is an enhanced assault statute that imposes increased penalties for conduct that violates Iowa's simple assault statute and which is committed against someone within a domestic relationship.

The simple-assault statute provides,

A person commits an assault when, without justification, the person does any of the following:

a. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.

b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

c. Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.

Iowa Code § 708.1(2)(a)-(c). In the written plea agreement for his predicate domestic-abuse-assault conviction, Kelly admitted that "on 12-5-2010, in Polk Co. IA, I did assault [my daughter's mother] while she was driving a car. I threw a milk bottle at the car and hit the car with a shovel. I put her in fear of contact with me." Kelly argues that his plea agreement makes clear that he pleaded guilty to a violation of section 708.1(2)(b) and that the resulting conviction was not for a crime of violence, because section 708.1(2)(b) can be violated merely by placing another "in fear of immediate physical conduct which will be . . . insulting or offensive."

Kelly argues that an objectively reasonable attorney would have raised an objection to the career-offender enhancement on the basis of our decision in United States v. Ossana. In that case, we reversed a district court's application of a sentence enhancement under U.S.S.G. § 2K2.1(a)(4)(A), which applies to a defendant charged

with being a felon in possession of a firearm if the defendant has a prior felony conviction for a "crime of violence." Ossana, 638 F.3d at 897.[2] The district court based its application of the enhancement on Ossana's prior Arizona-state-court conviction for aggravated assault. Id. The Arizona statute provides that a violation can occur in one of three ways: "(1) [i]ntentionally, knowingly, or recklessly causing any physical injury to another person; or (2) [i]ntentionally placing another person in reasonable apprehension of imminent physical harm; or (3) [k]nowingly touching another person with the intent to injure, insult, or provoke such person." Ossana, 638 F.3d at 897 n.1 (quoting Ariz. Rev. Stat. § 13-1203). We concluded first that the modified categorical approach applied because the statute included at least two offenses that did not require violent force. We reasoned that the statute could be violated with non-violent "contact by '[k]nowingly touching another person with the intent to . . . insult or provoke such person.'" Id. at 900 (alterations in original) (quoting Ariz. Rev. Stat. § 13-1203(A)(3)). We further reasoned that the statute could also be violated "with merely reckless behavior if an actual physical injury results," concluding that a crime with a mens rea of recklessness was not a crime of violence. Id. at 900, 903 (citing Ariz. Rev. Stat. § 13-1203(A)(1)). Applying the modified categorical approach, we reviewed the relevant underlying documents and concluded that they demonstrated only that Ossana had not been convicted of conduct involving "merely insulting or provocative contact as described in section 13-1203(A)(3)," id. at 904, because he had used a vehicle to commit the assault, and that such non-violent contact by a car would "place that person in fear of violent force thereby bringing the offense within a different, qualifying statutory subsection." Id. (citing Ariz. Rev. Stat. § 13-1203(A)(2)). We remanded, however because the documents included in the record did not eliminate the possibility that Ossana had been convicted of the non-qualifying reckless-driving offense under section 13-1203(A)(1). Id.

---

[2]The meaning of "a crime of violence" under § 2K2.1(a)(4)(A) is the same as the meaning "given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." Ossana, 638 F.3d at 898; see also U.S.S.G. § 2K2.1 cmt. n.1.

Kelly argues that <u>Ossana</u> provides a clear roadmap for a successful objection to the use of his Iowa domestic-abuse-assault conviction as a predicate offense. He contends that Iowa Code § 708.1(2)(b) is similar to the Arizona statute in <u>Ossana</u>, because both could be violated by insulting or offensive contact. But we did not hold in <u>Ossana</u> that all convictions under subsection 13-12-1203(A)(3) of the Arizona statute (intent to injure, insult, or provoke) could not qualify as a predicate offense. We said nothing about whether the modified categorical approach would permit a court to further parse the statute and determine whether a defendant had been convicted under that subsection of "[k]nowingly touching another person with the intent to injure . . . such person." We reasoned only that the "subdivision criminalizing merely insulting or provocative contact" did not include as an element the use of violent force. <u>Id.</u> at 904. Thus, it does not ineluctably follow from <u>Ossana</u> that Kelly's attorney's failure to object to his sentence enhancement can be explained only as a failure to conduct adequate research, for the applicable case law at the time suggested that any objection to the sentence enhancement would have been futile.

Although <u>Ossana</u> did not address whether the modified categorical approach permits parsing of non-enumerated alternative elements contained within a statutory subsection, other cases that were applicable at Kelly's sentencing suggested that the modified categorical approach could be applied expansively to any overinclusive statute. <u>See</u> <u>United States v. Parks</u>, 620 F.3d 911, 914 (8th Cir. 2010) ("[O]ver-inclusiveness for career offender purposes may arise even if a criminal statute . . . is not *textually* divisible."), *overruled by* <u>United States v. Tucker</u>, 740 F.3d 1177 (8th Cir. 2014) (en banc); <u>see also</u> <u>United States v. Pearson</u>, 553 F.3d 1183, 1186 (8th Cir. 2009), *overruled by* <u>Tucker</u>, 740 F.3d 1177. Both <u>Parks</u> and <u>Pearson</u> evaluated escape-from-custody statutes that did not contain alternative elements in the text of the statutes, but nonetheless encompassed both "escape from custody," which constituted a qualifying offense, and "failure to return," which did not. <u>Parks</u>, 620 F.3d at 914-15; <u>Pearson</u>, 553 F.3d at 1186. In both cases, we held that the statute was overinclusive

and that the modified categorical approach permitted the district court to look at permissible documents to determine which escape-from-custody offense the defendant previously had been convicted of. This line of cases—overruled after the Supreme Court's decision in <u>Descamps v. United States</u>, 133 S. Ct. 2276 (2013), but still applicable when Kelly was sentenced—supports the district court's application of the modified categorical approach to the textually divisible Iowa simple-assault statute. Thus, a reasonable attorney could interpret our cases as saying that Kelly's conviction under subsection 708.1(2)(b) counts as a predicate offense under the modified categorical approach if the government can demonstrate, using permissible documents, that Kelly was convicted of "plac[ing] another in fear of immediate physical contact which will be painful[ or] injurious." Iowa Code § 708.1(2)(b). To that end, the government submitted Kelly's guilty plea documents, permissible under <u>Shepard</u>, 544 U.S. at 26, which revealed that he was convicted of throwing a milk bottle at a car driven by his daughter's mother and hitting that car with a shovel, conduct that eliminated the possibility that Kelly was convicted of the non-violent offenses contained in section 708.1(2)(b). This result was not foreclosed by our decision in <u>Ossana</u>, and we conclude that a reasonable attorney could believe that it was the result required under <u>Parks</u> and <u>Pearson</u>.

Kelly further argues that another case from our circuit, <u>United States v. Smith</u>, 171 F.3d 617 (8th Cir. 1999), made it clear that his Iowa conviction for domestic-abuse assault, based on section 708.1(2), was not a crime of violence. This argument derives from the statement in <u>Smith</u> that "If Smith pleaded guilty to § 708.1(2), then he was not convicted of an offense that 'has as an element, the use or attempted use of force.'" <u>Id.</u> at 620 (quoting 18 U.S.C. § 921(a)(33)(A)(ii)). That statement is dicta, however, for we applied the modified categorical approach to determine whether a violation of Iowa Code section 708.1 can serve as a predicate conviction under 18 U.S.C. § 922(g)(9), which criminalizes possessing a firearm after "having been convicted of a misdemeanor involving domestic violence." <u>Id.</u> at 619. The criminal complaint in Smith's prior assault conviction stated that "Smith grabbed [the mother

of his child] 'by the throat, and did also push her down.'" <u>Id.</u> at 621 (citation omitted).  We concluded that the complaint was sufficient to demonstrate that Smith had been convicted under section 708.1(1) rather than 708.1(2).  <u>Id.</u>  We did not discuss, however, whether a conviction under 708.1(2) was further divisible under the modified categorical approach, nor did we discuss whether a conviction under section 708.1(2) for acts "intended to place another in fear of immediate physical contact which will be painful[ or] injurious" would qualify as a predicate offense for the career-offender enhancement.

Given the absence of a clearly controlling precedent requiring a different course of action, and in light of the substantial deference we afford trial counsel, we conclude that Kelly's counsel's performance at sentencing was objectively reasonable.

The judgment is affirmed.

_____