# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 14-3627

———————————————

United States of America

*Plaintiff - Appellee*

v.

Barvarito Garcia-Longoria

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Southern District of Iowa - Council Bluffs

——————————

Submitted: December 14, 2015
Filed: April 27, 2016

——————————

Before WOLLMAN, LOKEN, and BYE, Circuit Judges.

——————————

LOKEN, Circuit Judge.

Barvarito Garcia-Longoria drove his estranged wife and their daughter from Omaha into neighboring Iowa, threatened to kill his wife, discharged a firearm multiple times, then drove back to Omaha and gave his wife the gun. His wife called the police and turned in the gun. Indicted on five counts, Garcia-Longoria pleaded guilty to being a felon in possession of a firearm, see 18 U.S.C. § 922(g)(1), admitting

at the plea hearing that he had a prior third degree felony conviction for assaulting a police officer in violation of Neb. Rev. Stat. § 28-931(1) (2006).

Garcia-Longoria's presentence investigation report (PSR) recommended increasing his base offense level by 6 to level 20 because the prior felony conviction was for a crime of violence. See U.S.S.G. § 2K2.1(a)(4)(A). Garcia-Longoria did not object. The district court[1] adopted a base offense level of 20, resulting, with other enhancements, in an advisory guidelines range of 78 to 97 months in prison. The court sentenced Garcia-Longoria to 84 months, to be followed by three years of supervised release and likely deportation to Mexico. Garcia-Longoria appeals his sentence, arguing the district court committed plain error in determining that his past felony conviction was for a crime of violence. Without that determination, he argues, his base offense level would be 14 and his advisory guidelines range would be 41 to 51 months in prison. Reviewing this issue *de novo*, we affirm. See United States v. Malloy, 614 F.3d 852, 856 (8th Cir. 2010) (standard of review), cert. denied sub nom. Kluge v. United States, 131 S. Ct. 3023 (2011).

Section 2K2.1(a)(4)(A) provides that the base offense level for a felon-in-possession offense is 20 if the defendant committed the offense after "sustaining one felony conviction of either a crime of violence or a controlled substance offense." As relevant here, "crime of violence" is defined to include "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." See U.S.S.G. § 2K2.1, comment. (n.1), incorporating by reference § 4B1.2(a)(1). In construing an analogous term -- the definition of "violent felony" in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i) -- the Supreme Court has held that "physical force" is synonymous with "*violent* force -- that is, force

---

[1] The Honorable John A. Jarvey, Chief Judge of the United States District Court for the Southern District of Iowa.

capable of causing physical pain or injury to another person." <u>Johnson v. United States</u>, 559 U.S. 133, 140 (2010).

In determining whether an offense falls within this definition, "we focus on the generic elements of the offense and not on the specific facts underlying the conviction." <u>Malloy</u>, 614 F.3d at 857 (quotation and alteration omitted). If the elements of the statutory offense are listed in the disjunctive, defining offenses "some of which require violent force and some of which do not, the 'modified categorical approach' . . . permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record -- including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." <u>Johnson</u>, 559 U.S. at 144 (citations omitted).

The prior conviction here at issue was Garcia-Longoria's violation of Neb. Rev. Stat. § 28-931(1), which provides that a person "commits the offense of assault on an officer . . . in the third degree if: [h]e or she intentionally, knowingly, or recklessly causes bodily injury . . . [t]o a peace officer . . . while such officer is engaged in the performance of his or her official duties." "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." Neb. Rev. Stat. § 28-109(4). In <u>Malloy</u>, we held that an Iowa conviction for committing the offense of interference with official acts was a crime of violence under the force clause of U.S.S.G. § 4B1.2(a)(1); because an element of the statute was that the offender "inflicted bodily injury" upon a peace officer, we found it "difficult, if not impossible, to imagine how the charged conduct could be carried out without actually using physical force against the person of another." 614 F.3d at 860 (quotation omitted); <u>accord</u> <u>United States v. Perry</u>, 531 F. App'x 770, 771 (8th Cir. 2013). The same is true of the bodily injury element in Neb. Rev. Stat. § 28-931(1), as this statute has been applied by the Supreme Court of Nebraska. <u>See, e.g.</u>, <u>State v. Melton</u>, 477 N.W.2d 154, 156 (Neb. 1991).

On appeal, Garcia-Longoria argues that the Nebraska statute's *mens rea* provision distinguishes this case from our decision in <u>Malloy</u>. Whereas the Iowa statute in <u>Malloy</u> required proof that the offender "inflicted bodily injury," clearly describing a purposeful act, Neb. Rev. Stat. § 28-931(1) is violated if the offender "intentionally, knowingly, or *recklessly* causes bodily injury" to a police officer. Therefore, he argues, Neb. Rev. Stat. § 28-931(1) is not categorically a crime of violence, relying on our prior decisions holding that, at least in some circumstances, a crime involving a *mens rea* of mere recklessness does not qualify as a crime of violence. See <u>United States v. Ossana</u>, 638 F.3d 895, 900-03 & n.6 (8th Cir. 2011); <u>compare</u> <u>United States v. Boose</u>, 739 F.3d 1185, 1187 (8th Cir. 2014), <u>and</u> <u>United States v. Dawn</u>, 685 F.3d 790, 795 (8th Cir. 2012) (following <u>Ossana</u>), <u>with</u> <u>United States v. Kosmes</u>, 792 F.3d 973, 977 (8th Cir. 2015) (distinguishing <u>Ossana</u>), <u>cert. denied</u>, ___ S. Ct. ____ (2016).[2]

There is a rather obvious, and ultimately fatal, flaw to this contention. Paragraph 31 of Garcia-Longoria's PSR, to which he did not object, described his conviction for third degree assault as involving far more than reckless conduct. Citing a "presentence report," the PSR stated that Garcia-Longoria resisted an officer responding to a call regarding a "cutting" and "struck the officer in the face with his fist." Therefore, the government logically contends, even if "recklessly" assaulting a police officer would not be a crime of violence under the force clause, Garcia-Longoria was convicted for punching a police officer in the face, an intentional violation of the Nebraska statute that was a crime of violence.

Garcia-Longoria has two responses to the government's contention. First, relying on <u>Descamps v. United States</u>, 133 S. Ct. 2276 (2013), he argues that, because

---

[2]Unlike the statutes at issue in <u>Ossana</u>, <u>Dawn</u>, and <u>Boose</u>, Garcia-Longoria has not cited, and we have not found, any Nebraska reported decision in which a violation of Neb. Rev. Stat. § 28-931(1) was predicated on defendant causing bodily injury to an officer by recklessly driving a motor vehicle.

all the *mens rea* elements of Neb. Rev. Stat. § 28-931(1) are contained in one subsection, the statute is textually indivisible and therefore the modified categorical approach cannot be used to distinguish between prior convictions for intentional and reckless violations. This contention, though creative, is without merit. It is contrary to the Supreme Court's analysis applying the comparable force clause at issue in Johnson, where the Court noted that the *mens rea* alternatives in a state statute defining battery were stated in the disjunctive, permitting the prosecution to prove either that the defendant "'intentionally struck' the victim, or that he merely 'actually and intentionally touched' the victim." 559 U.S. at 137 (alterations omitted).

Even more significantly, in the Court's post-Descamps decision in United States v. Castleman, the statute at issue defined assault as including "intentionally, knowingly or recklessly causing bodily injury to another." 134 S. Ct. 1405, 1413 (alterations omitted). In ruling for the government, the Court acknowledged but then put aside the unresolved debate over whether reckless application of force can constitute "use" of force because defendant Castleman had pleaded guilty to "intentionally and knowingly caus[ing] bodily injury," which "necessarily involve[d] the use of physical force." Id. at 1414 & n.8 (2014). This was an obvious application of the modified categorical approach to the *mens rea* alternatives in a single subsection of the statute. Accord Avendano v. Holder, 770 F.3d 731, 734 (8th Cir. 2014) ("The Minnesota statute is divisible in the Descamps sense, because it provides alternative culpable mental states: 'purpose to terrorize' and 'reckless disregard of the risk of causing . . . terror.'"). Finally, the Supreme Court of Nebraska has held that committing third degree assault by intentionally causing bodily injury, and by recklessly causing bodily injury, are different crimes. State v. Pribil, 395 N.W.2d 543, 547 (Neb. 1986). Based on these authorities, we conclude that the *mens rea* alternatives in Neb. Rev. Stat. § 28-931(1) are "alternative element[s] in a divisible statute" that permit use of the modified categorical approach to determine whether Garcia-Longoria's prior conviction was a crime of violence. Descamps, 133 S. Ct. at 2293.

Second, Garcia-Longoria argues, even if the Nebraska statute contains divisible *mens rea* elements, the fact recitals in paragraph 31 of the PSR cannot establish that his third degree assault conviction was for a crime of violence because the district court may only consider a limited universe of court documents in conducting a modified categorical analysis. It is true that, "where the PSR expressly relies on police reports . . . that would be inadmissible at sentencing under the modified categorical approach, the PSR's factual assertions, even if a defendant does not object to them, are not an adequate basis for affirming the defendant's sentence." United States v. Thomas, 630 F.3d 1055, 1057 (8th Cir. 2011) (quotations and alterations omitted). However, in cases where the PSR described prior offense conduct without stating its sources, "we have held that failure to object relieved the government of its obligation to introduce at sentencing the documentary evidence Taylor or Shepard requires." United States v. McCall, 439 F.3d 967, 974 (8th Cir. 2006) (en banc) (citations omitted), abrogated in part on other grounds by Begay v. United States, 553 U.S. 137 (2008).

That is the situation here. By not objecting to the facts set forth in paragraph 31 of the PSR, *and* by conceding that his prior assault felony conviction was a crime of violence, Garcia-Longoria relieved the government of its obligation to submit court documents to establish at sentencing, using the modified categorical approach, that Garcia-Longoria's prior conviction was a crime of violence because he intentionally caused bodily injury. Therefore, we assume without deciding that violating Neb. Rev. Stat. § 28-931(1) by recklessly causing bodily injury would not be a crime of violence, and we conclude that the district court did not commit error -- much less plain error -- in determining that Garcia-Longoria's advisory guidelines base offense level was 20 because his prior felony conviction for intentionally assaulting a police officer was a crime of violence.

The judgment of the district court is affirmed.

_____