# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-1774

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Laquann M. Dawn, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: November 17, 2011
Filed: June 28, 2012

———————

Before SMITH, COLLOTON, and GRUENDER, Circuit Judges.

———————

SMITH, Circuit Judge.

LaQuann Dawn challenges the sentence he received after pleading guilty to possessing with the intent to distribute more than five grams of a mixture or substance containing cocaine base ("crack cocaine"), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). He specifically challenges the district court's application of the career-offender enhancement under U.S.S.G. § 4B1.1, which applies when a defendant is convicted of a "crime of violence or a controlled substance offense" and "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." Dawn argues that the government failed to establish that his prior Arkansas convictions for second-degree battery and second-degree sexual assault qualify as "crimes of violence" under § 4B1.1. We reverse and remand for resentencing.

## I. *Background*

Pursuant to a written plea agreement, Dawn pleaded guilty to one count of possessing with the intent to distribute more than five grams of crack cocaine. The presentence investigation report (PSR) indicated that the base offense level for Dawn's conviction was 18. The PSR assessed Dawn a career-offender enhancement under U.S.S.G. § 4B1.1 for two prior felony convictions in the State of Arkansas involving crimes of violence, which raised his offense level to 34 and his criminal history category to VI.[1] The alleged crimes of violence were second-degree sexual assault in 2002 and second-degree battery in 2006. The PSR applied a three-level reduction for acceptance of responsibility, resulting in a total offense level of 31. Based on a criminal history category of VI and an offense level of 31, the PSR calculated a Guidelines range for Dawn of 188 to 235 months' imprisonment, followed by three to five years of supervised release.

Prior to sentencing, Dawn filed a written objection to the PSR's recommended career-offender enhancement. In his objection, Dawn argued that the second-degree sexual assault and second-degree battery convictions could not be counted toward Dawn's career-offender status for three reasons: (1) the record contained no evidence that, at the time of the convictions, Dawn had counsel or waived his right to counsel; (2) using the convictions to calculate both his criminal history score and his sentencing score violated Dawn's due process rights; and (3) the record contained no evidence that the convictions were for crimes of violence.

At Dawn's sentencing hearing on March 25, 2011, the district court briefly addressed Dawn's objection:

> Two prior crimes of violence plus drug offense, this equals a career offender pursuant to definitions of the guidelines. The court

---

[1]"A career offender's criminal history category in every case . . . shall be Category VI." U.S.S.G. § 4B1.1(b).

assumes counsel in all cases, generally court appointed counsel, defense attorney. The crimes of violence and drugs have been properly listed, so the court determined there is no double counting. Criminal offenses and criminal categories are two separate entities.

The court determined that the Guidelines range for Dawn's crack-cocaine offense was 188 to 235 months' imprisonment. Before imposing its sentence, the court heard from Dawn's counsel:

> [DAWN'S COUNSEL]: Your Honor, I would only comment, the court has identified the guideline range. I'd ask the court to keep in mind the fact that as I reviewed the presentence report there are no prior criminal convictions for drugs in this particular case. What bumps this up to the higher level is the allegations of crimes of violence. I made my argument—
>
> THE COURT: Yes, I've seen it.
>
> [DAWN'S COUNSEL]: —in my objections that the court has seen it.
>
> As the court considers the sentencing range in this case, I'd ask the court to keep in mind that . . . this client has no prior criminal history for drug issues, so therefore, I would encourage the least amount that we could possibly give him.

The government responded to Dawn's counsel's statements:

> [W]ith regard to the crimes of violence in this matter, the sexual assault in the second degree, as the PSR indicates, relates to the attempted rape of a minor child. The battery second degree conviction, I would proffer to the court relates to the defendant breaking the arm of a law enforcement officer during the attempted arrest of Mr. Dawn, which I believe both qualify as crimes of violence.

THE COURT: I think so. I've so ruled.

[GOVERNMENT]: Thank you, Your Honor.

To that, Dawn's counsel responded that "as to the issue of an officer being injured while my client was being arrested, he was—he never went to court on that issue, as he articulated to me. He has not had a conviction of that issue." The district court overruled Dawn's objection, and sentenced Dawn to 188 months' imprisonment, followed by four years of supervised release.

## II. *Discussion*

On appeal, Dawn contends that the district court erred when it determined that his prior Arkansas convictions for second-degree sexual assault and second-degree battery were for "crimes of violence." Dawn avers that the court further erred by applying the career-offender enhancement under U.S.S.G. § 4B1.1(a) in the absence of any specific evidence of Dawn's convictions. He asks this court to remand the case with instructions to resentence him based on a total offense level of 18 and a criminal history category of II.[2] The government concedes that the case must be remanded for resentencing; however, it contends that the record should be reopened on remand for the admission of evidence to determine whether Dawn's prior convictions were for crimes of violence.

### A. *Career-Offender Status*

Dawn alleges that he is not a career offender under U.S.S.G. § 4B1.1(a) because second-degree sexual assault and second-degree battery are not categorically crimes of violence.

---

[2]Dawn suggests that the prior convictions cannot be considered for determining the applicable criminal history category. We find no support for this argument. *See* U.S.S.G. § 4A1.1(a).

According to U.S.S.G. § 4B1.1(a),

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

A "crime of violence" is:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1)    has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2)    is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). "[T]he term 'physical force,' as used in [§ 4B1.2(a)(1)], means '*violent* force—that is, force capable of causing physical pain or injury to another person.'" *United States v. Vinton*, 631 F.3d 476, 485–86 (8th Cir. 2011) (quoting *Johnson v. United States*, 130 S. Ct. 1265, 1271 (2010)) (holding that an offense in which the defendant attempted to cause, or knowingly caused, physical injury to another person by means of a deadly weapon was a crime of violence), *cert. denied*, 132 S. Ct. 213 (2011). To constitute a crime of violence under § 4B1.2(a)(2), the crime "must (1) present a serious potential risk of physical injury to another, and (2) be roughly similar, in kind as well as degree of risk posed, to the offenses listed in § 4B1.2(a)." *United States v. Watson*, 650 F.3d 1084, 1092 (8th Cir. 2011) (quotations, alteration, and citation omitted). "'[A] crime involves the requisite risk when the risk posed by the crime in question is comparable to that posed by its closest

analog among the enumerated offenses.'" *Id.* at 1092–93 (alteration in original) (quoting *Sykes v. United States*, 131 S. Ct. 2267, 2273 (2011)).

"In determining whether a prior conviction was for a crime of violence, we apply a categorical approach, looking to the elements of the offense as defined in the . . . statute of conviction rather than to the facts underlying the defendant's prior conviction." *United States v. Parks*, 620 F.3d 911, 913 (8th Cir. 2010), *cert. denied*, 132 S. Ct. 125 (2011). But if the statute is overinclusive, encompassing multiple crimes some of which constitute crimes of violence and some of which do not, "we apply a modified categorical approach that allows the sentencing court to look at the charging document, plea colloquy, and comparable judicial records to determine whether the prior offense was a crime of violence." *Id.* We do not use these documents "to see how the particular crime at issue was committed"; rather, we use them "*only* to determine which part of the statute the defendant violated." *United States v. Williams*, 627 F.3d 324, 328 (8th Cir. 2010) (emphasis in original) (quotation and citation omitted). We "then determine[] whether a violation of that statutory subpart constitutes a crime of violence in the ordinary case." *Id.* (quotation and citation omitted).

The government concedes "that the district court should have followed a modified categorical approach in making its finding that Dawn's prior convictions [for second-degree battery and second-degree sexual assault] were crimes of violence." "Confessions of error are, of course, entitled to and given great weight, but they do not relieve this [c]ourt of the performance of the judicial function." *Sibron v. New York*, 392 U.S. 40, 58 (1968) (quotation and citation omitted). Thus, we must determine whether Arkansas's second-degree battery and second-degree sexual assault statutes are overinclusive to find whether the district court erred by determining that Dawn is a career offender without first deciding which parts of the statutes he violated.

## 1. *Second-Degree Battery*

The government concedes that Arkansas's second-degree battery statute is overinclusive. A person commits second-degree battery if

(1) [w]ith the purpose of causing physical injury to another person, he causes serious physical injury to any person;

(2) [w]ith the purpose of causing physical injury to another person, he causes physical injury to any person by means of a deadly weapon other than a firearm;

(3) [h]e recklessly causes serious physical injury to another person by means of a deadly weapon; or

(4) [h]e intentionally or knowingly, without legal justification, causes physical injury to one he knows to be [an officer, a firefighter, a correctional facility employee, a school employee, an elderly person, a young child, a state employee, a health-care provider, or mentally incompetent].

Ark. Code Ann. § 5-13-202(a) (2006) (the version of the statute in effect at the time of the offense).

Because a vehicle can constitute a "deadly weapon," subsection (3) of the Arkansas statute encompasses reckless driving that results in a serious physical injury. *Harmon v. State*, 260 Ark. 665, 670 (1976) (affirming a conviction for second-degree battery for reckless driving that resulted in serious physical injury to another person). In *United States v. Ossana*, 638 F.3d 895, 897 (8th Cir. 2011), we considered an Arizona statute that criminalizes, *inter alia*, aggravated assault with a deadly weapon or dangerous instrumentality. We noted that the statute "encompass[ed] reckless driving that results in an injury" and held that "a conviction pursuant to [the Arizona statute] involving merely reckless use of a vehicle is not a crime of violence." *Id.* at 903. In light of our holding in *Ossana*, second-degree battery under Arkansas law is

not categorically a crime of violence because subsection (3) of the Arkansas statute encompasses reckless driving that results in a serious injury. In other words, the statute is overinclusive because it includes some offenses that are crimes of violence and some that are not. Thus, the district court erred by failing to apply the modified categorical approach to determine whether Dawn's prior conviction for second-degree battery was for a crime of violence.

## 2. *Second-Degree Sexual Assault*

The parties also agree that the Arkansas second-degree sexual assault statute is overinclusive. Under Arkansas law, a person commits second-degree sexual assault if the person

(1) [e]ngages in sexual contact with . . . another person by forcible compulsion; or

(2) [e]ngages in sexual contact . . . with another person who is incapable of consent because the person is physically helpless, mentally defective, or mentally incapacitated; [or]

(3) [b]eing eighteen (18) years of age or older, engages in sexual contact with . . . another person, not the person's spouse, who is less than fourteen (14) years of age; or

(4)(A) [e]ngages in sexual contact with another person who is less than eighteen (18) years of age and the person:

(i) [i]s employed with the Department of Correction, Department of Community Punishment, any city or county jail, or any juvenile detention facility, and the minor is in custody at a facility operated by the agency or contractor employing the person;

(ii) [i]s a professional under § 12-12-507(b)[3] or is in a position of trust or authority over the minor; or

(iii) [i]s the minor's guardian, an employee in the minor's school or school district, or a temporary caretaker.

Ark. Code Ann. § 5-14-125(a) (2002) (the version of the statute in effect at the time of the offense).

Subsection (a)(1) of the statute "has as an element the use, attempted use, or threatened use of physical force against the person of another" and is necessarily a crime of violence. U.S.S.G. § 4B1.2(a)(1).[4]

Also, we have held that sexual offenses involving minors, such as those listed in subsection (a)(3) of the statute, are crimes of violence under U.S.S.G. § 4B1.2(a)(2) because "[s]exual contact between parties of differing physical and emotional maturity carries a substantial risk that physical force may be used in the course of committing the offense." *United States v. Banks*, 514 F.3d 769, 780 (8th Cir. 2008) (quotations, alteration, and citation omitted) (finding that a conviction for sexual assault on a child under 16 was one for a crime of violence even though "the crime [could] be

---

[3]The current version of that statute is Ark. Code Ann. § 12-18-402(b).

[4]The definition of "forcible compulsion" under Arkansas law, Ark. Code Ann. § 5-14-101(2), includes a threat of kidnapping, thus suggesting that an offender conceivably could violate the sexual assault statute by engaging in sexual contact with another person by threat of kidnapping by deception. *See* Ark. Code Ann. § 5-11-102(a) (defining kidnapping as restraining another without consent); Ark. Code Ann. § 5-11-101(3)(A) (defining "restraint without consent" to include restraint by deception). In that event, the sexual assault would qualify as a crime of violence under U.S.S.G. § 4B1.2(a)(2) as an offense that "involves conduct that presents a serious potential risk of physical injury to another." *See United States v. Billups*, 536 F.3d 574, 581 (7th Cir. 2008) (holding that false imprisonment by deception is a crime of violence due to the "potential for violent confrontation").

committed by mere sexual contact with a minor"); *see also United States v. Bauer*, 990 F.2d 373, 374–75 (8th Cir. 1993) (per curiam) (holding statutory rape is a crime of violence under U.S.S.G. § 4B1.2 notwithstanding "that the acts with the child were consensual and did not involve physical violence"); *cf. United States v. Scudder*, 648 F.3d 630, 633–34 (8th Cir. 2011) (determining that child molestation under an Indiana statute prohibiting sexual acts between a person 16 and older and a child 12 or older but under 16 is categorically a violent felony under 18 U.S.C. § 924(e)(1)); *United States v. Tharp*, 323 F. App'x 478, 478 (8th Cir. 2009) (unpublished per curiam) (finding that the defendant's previous conviction for statutory rape qualified as a violent felony under § 924(e)); *United States v. Anderson*, 438 F.3d 823, 824 (8th Cir. 2006) (holding that "sexual contact with a complainant under the age of 13 years by an actor more than 36 months older than the complainant" is a violent felony under § 924(e)); *United States v. Mincks*, 409 F.3d 898, 900 (8th Cir. 2005) (holding that second-degree statutory rape and second-degree statutory sodomy in Missouri are crimes of violence under 18 U.S.C. § 924(e)(1)); *United States v. Alas-Castro*, 184 F.3d 812, 813 (8th Cir. 1999) (per curiam) (holding that a crime committed under a Nebraska statute criminalizing sexual contact between an adult 19 or older and a child 14 or younger constituted a crime of violence under 18 U.S.C. § 16(b)); *United States v. Rodriguez*, 979 F.2d 138, 141 (8th Cir. 1992) (holding offense of lascivious acts with a child, by its nature, poses a substantial risk of physical force, and, therefore, is a crime of violence under 18 U.S.C. § 16(b)).[5]

---

[5]"[W]e interpret the term violent felony in [18 U.S.C.] § 924(e) in the same manner that we interpret the term crime of violence in U.S.S.G. § 4B1.2," and "the differences between the definitions for crime of violence in [18 U.S.C.] § 16 and U.S.S.G. § 4B1.2 do not matter in the context of felony sexual contact with children." *Anderson*, 438 F.3d at 825. *But cf. United States v. Ross*, 613 F.3d 805, 809-10 (8th Cir. 2010) (noting "that the practice of interchanging the two provisions [i.e., § 4B1.2 and § 924(e)] cannot be followed universally" because the Sentencing Guidelines "include binding commentary that is not applicable to § 924(e)").

We have not ruled whether sexual offenses involving persons incapable of giving consent or sexual offenses involving persons in positions of authority over minors, such as those listed in subsections (a)(2) and (a)(4) of Arkansas's second-degree sexual assault statute, are crimes of violence. Nonetheless, "the same logic [that applies to minors under 14] applies to other types of vulnerable victims such as a victim who is physically helpless, mentally defective[,] or mentally incapacitated because they are incapable of offering consent." *United States v. Herrera*, 647 F.3d 172, 180 (5th Cir. 2011) (quotations, alteration, and citation omitted); *see also United States v. Riley*, 183 F.3d 1155, 1157–60 (9th Cir. 1999) (holding that a statute prohibiting sex with persons who were unable to consent was a "crime of violence" because of the inherent risks, and "refus[ing] to minimize [the] crime solely because its victim may be helpless"). Similarly, a minor who is assaulted by one in a position of authority over the minor is also a "vulnerable victim[]." *Herrera*, 647 F.3d at 180; *see Chery v. Ashcroft*, 347 F.3d 404, 409 (2d Cir. 2003) (stating that "the defendant's position of authority over the victim" creates a "substantial risk of physical force"). Moreover, a sex offense that occurs "*without the victim's consent* and with knowledge that consent was not given" constitutes a crime of violence under § 4B1.2(a)(2) because "this offense creates a substantial risk of a violent, face-to-face confrontation should the victim, or another person who would protect the victim, become aware of what is happening." *United States v. Craig*, 630 F.3d 717, 724–25 (8th Cir. 2011) (emphasis added); *cf. Costa v. Holder*, 611 F.3d 110, 115 (2d Cir. 2010) (per curiam) ("[W]hen the victim cannot consent," either because of the victim's incapacity or legal status as a minor, "the statute *inherently* involves a substantial risk that physical force may be used in the course of committing the offense." (quotation and citation omitted)).

"[B]ecause of the [forcible compulsion element in subsection (a)(1), the] disparate ages of the defendant and the victim [in subsection (a)(3)], . . . the mental incapacity or physical helplessness of the victim [in subsection (a)(2)], [and] the defendant's position of authority over the victim [in subsection (a)(4)]," all of the

crimes listed under Arkansas's second-degree sexual assault statute "include[] a substantial risk of physical force" or an element of force. *Costa*, 611 F.3d at 115 (quotation and citation omitted). And all of the crimes listed in the statute are "similar in risk to the crimes listed in [§ 4B1.2(a)(2)]." *Scudder*, 648 F.3d at 634. Thus, second-degree sexual assault in Arkansas is categorically a crime of violence, and the district court did not err by determining that Dawn's conviction for second-degree sexual assault was for a crime of violence.

## B. *Record on Remand*

Although the parties agree that we must remand the case to determine whether Dawn's second-degree battery conviction is for a crime of violence and, thus, whether Dawn is a career offender, they disagree about whether the record should be reopened on remand. Dawn contends that the government was aware of its burden at sentencing and should not be permitted two bites at the apple. In response, the government argues that Dawn made unclear objections to the PSR and that the district court ruled on Dawn's objections without affording the government an opportunity to present evidence on the issue, which it was prepared to do.

Whether we should permit the government to adduce additional evidence of Dawn's second-degree battery conviction on remand depends on whether the government had an opportunity to present the evidence but failed and how definitively the defendant raised the issue. "The consensus among our sister circuits is that generally where the government knew of its obligation to present evidence and failed to do so, it may not enter new evidence on remand." *United States v. Archer*, 671 F.3d 149, 168 (2d Cir. 2011). In *United States v. Thomas*, we held that the government should not be permitted to provide additional evidence at resentencing when the government was aware of its burden of proof at the first sentencing hearing and conceded that it lacked sufficient evidence to meet its burden. 630 F.3d 1055, 1057 (8th Cir. 2011) (per curiam). "[W]e conclude[d] that the [g]overnment had a full and fair opportunity to present its evidence and that we should follow the traditional path

of limiting the [g]overnment to one bite at the apple." *Id.* (quotation and citation omitted).

Nonetheless, "it may sometimes be appropriate to allow expansion of the record and may, at other times, be appropriate to remand for resentencing without expansion of the record." *Ossana*, 638 F.3d at 904 (*comparing Thomas,* 630 F.3d at 1056–57, *with Williams,* 627 F.3d at 329). "It seems that our distinction rest[s] upon the clarity of the issue below and whether we deem[ ] the government's failure of proof at the initial sentencing to be excusable." *Id.* (permitting an expansion of the record on resentencing given the vagueness of the defendant's objections); *see also Archer*, 671 F.3d at 168–69 (citing *United States v. Noble*, 367 F.3d 681, 682 (7th Cir. 2004) (collecting circuit court cases both applying the general rule and creating exceptions for it)); *United States v. Gammage*, 580 F.3d 777, 779–80 (8th Cir. 2009) (remanding for resentencing based on the existing record because the government was on notice of its burden of proof, there were no arcane legal principles involved in the case, and the district court committed no legal error that misled the government or deflected it from introducing its evidence); *United States v. Dunlap*, 452 F.3d 747, 749–50 (8th Cir. 2006) (finding that the district court did not err in allowing the government to present evidence at resentencing "[b]ecause nothing in our original remand order precluded the government" from doing so); *United States v. Hudson*, 129 F.3d 994, 995 (8th Cir. 1997) (per curiam) ("Because we have clearly stated the governing principles as to when and how disputed sentencing facts must be proved, we direct that resentencing on remand be conducted on the existing sentencing record, with no opportunity for either party to reopen or add to that record.").

For instance, in *Williams*, we held that the district court could hear additional evidence on remand because, at the initial sentencing hearing, "both the Government and the district court relied on a mistaken understanding of the modified categorical approach, which may have impeded full development of the record." 627 F.3d at 329; *see also United States v. King*, 598 F.3d 1043, 1050 (8th Cir. 2010) (permitting an

expansion of the record on remand because the government and the district court relied on a mistaken understanding of the law, which impeded full development of the record, and because defense counsel did not clearly explain his objection to the sentence enhancement).

In this case, as in *Williams*, the facts justify an expansion of the record on remand. The government argues that we should reopen the record because Dawn's objections to the PSR were unclear. In response to the PSR, Dawn's counsel prepared a lengthy list of objections. In his second objection, which went on for two pages, he made three arguments. First, he argued that the two prior felony convictions could not be counted as crimes of violence because "you show nothing as to those offenses that reflect that at the time of the conviction Mr. Dawn had counsel or that he did not have counsel, or that he waived counsel." Second, he argued that the offenses were counted twice, in violation of Dawn's due process rights. Third, he contended that the information in the PSR did not prove that either Dawn's sexual assault conviction or his battery conviction were for crimes of violence. Dawn's counsel did not argue that the statutes were overinclusive, nor did he urge the court to apply a modified categorical approach to determine whether his prior convictions were for crimes of violence.

The government also points out that, although it was prepared at sentencing to put on evidence regarding Dawn's career-offender status, the district court ruled on Dawn's objections before it had the opportunity to do so. Without developing a factual record, the court summarily concluded that "[t]he crimes of violence and drugs have been properly listed . . . ." Following the court's ruling that Dawn's prior offenses were for crimes of violence, the government stated on the record:

> [W]ith regard to the crimes of violence in this matter, the sexual assault
> in the second degree, as the PSR indicates, relates to the attempted rape
> of a minor child. The battery second degree conviction, I would proffer
> to the court relates to the defendant breaking the arm of a law

enforcement officer during the attempted arrest of Mr. Dawn, which I believe both qualify as crimes of violence.

The court did not provide the government or Dawn with an opportunity to proffer evidence on whether the second-degree battery conviction was for a crime of violence.[6] Thus, the case should be remanded for resentencing to determine whether the conviction was for a crime of violence and whether Dawn is a career offender under the Guidelines. On remand, both parties may proffer evidence on the nature of Dawn's second-degree battery conviction.[7]

### III. *Conclusion*

Accordingly, we vacate Dawn's sentence and remand this case to the district court for resentencing consistent with this opinion.

_____

---

[6]The only information the district court had available to it regarding the nature of Dawn's prior convictions is in Paragraph 21 of the PSR: "The defendant was originally charged with Sexual Indecency With A Child. According to a Field Report from the Arkansas Department Of Community Correction, on September 8, 2002, the defendant attempted to rape a thirteen year old girl." Because second-degree sexual assault is categorically a crime of violence, this information is irrelevant.

[7]"[W]e recently held that, in applying the modified categorical approach, sentencing courts may not look to factual assertions within federal presentence investigation reports—even if the defendant failed to object to the reports—where the source of the information in the reports might have been from a non-judicial source." *Ossana*, 638 F.3d at 903. The scope of judicial factfinding is limited to "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005).