BRIGHT, Circuit Judge,
concurring in part and dissenting in part.
I agree sufficient evidence supported the verdict against Mary Ramos and, therefore, I concur with the majority’s holding that the district court properly denied Mary Ramos’ motion for judgment of acquittal. However, I dissent with respect to the sentence imposed upon -both Mary and Earl Ramos (the “Ramoses”). Specifically, I disagree with the majority’s conclusion that the sentencing judge properly *921 applied a marijuana equivalency ratio of 1:167 after finding the synthetic cannabi-noid sprayed onto plant material (“synthetic cannabinoid potpourri”) was most analogous to pure Tetrahydrocannabinol (“THC”) under Application Note 6 of U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2D1.1.
THC is a psychoactive ingredient that causes a euphoric state by binding to can-nabinoid receptors in the brain. The MERCK Manual of Diagnosis and Therapy 1525-26 (Robert S. Porter et al. eds., 19th ed.2011). THC is “naturally contained in a plant of the genus Cannabis ... or in the resinous extractives of such plant.” 21 C.F.R. § 1308.11(d)(31). Thus, THC is not only a Schedule I controlled substance, but also the psychoactive ingredient in a number of Schedule I controlled substances under the Guidelines.
The marijuana equivalency table in Application Note 8(D) to U.S.S.G. § 2D1.1 lists several distinct Schedule I controlled substances where THC is the psychoactive ingredient. Importantly, each of the controlled substances in Application Note 8(D) — other than pure forms of THC— may contain some amount of plant material. Compare 21 U.S.C. § 802(16) (defining marihuana as “all parts of the plant Cannabis sativa L.”), with U.S.S.G. § 2D1.1(e), Drug Quantity Table n.H (defining hashish as containing both THC and “fragments of plant material” — in addition to other ingredients), with id., n.I (defining hashish oil as containing THC, other ingredients, and “essentially free of plant material (e.g. plant fragments)”). Interestingly, as the chart below illustrates, the marijuana equivalency ratio under Application Note 8(D) increases as the amount of plant material decreases:
Controlled Substance Ratio Amount of Plant Material
Marihuana/Cannabis 1:1 ”[A]11 parts of the plant Cannabis sativa L.” 21 U.S.C. § 802(16).
Cannabis Resin or Hashish 1:5 Contains “fragments of plant material.” U.S.S.G. § 2Dl.l(c), Drug Quantity Table n.H.
Hashish Oil 1:50 Must be “essentially free of plant material.” U.S.S.G. § 2Dl.l(e), Drug Quantity Table n.I.
THC, Organic or Synthetic 1:167 -Contains no plant material.
Thus, under the Guidelines, the marijuana equivalency ratio applied to THC-based controlled substances is highly dependent on the amount of plant material — likely because the concentration of THC increases with the extraction of plant material. See, e.g., Wayne Hall et al., Cannabinoids and Cancer: Causation, Remediation, and Palliation, 6 Lancet Oncology 35, 35 (2005) (noting the increase in THC concentration between marijuana (0.5% to 5%), hashish (2% to 8%), and hashish oil (15% to 20%)).
Here, because synthetic cannabinoid potpourri is not “specifically referenced” in the Guidelines, the Guidelines required the sentencing judge to determine the Guideline analogue. U.S.S.G. § 2D1.1 cmt. n. 6. To do so, the Guidelines charged the sentencing judge to “determine the base offense level using the marihuana equivalency of the most closely related controlled substance” — including THC-based controlled substances containing plant material. Id. (emphasis added). At issue is whether the record supported a finding that the synthetic cannabinoid potpourri *922 was “most closely related” to pure THC rather than any of the other controlled substances that contain both THC and plant material. See id.
To determine the “most closely related controlled substance,” Application Note 6 requires the sentencing judge to consider, among other things, “[w]hether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.” Id., cmt. n. 6(c) (emphasis added) (hereinafter, “Factor C”). The parties do not dispute that, when analyzing Factor C, the government’s expert analyzed only the effect of pure synthetic can-nabinoids on the central nervous ' system, not the effect of the synthetic cannabinoid potpourri.[9]
Here, an expert determined, and the sentencing judge found, that pure THC is the most equivalent controlled substance to the pure form of the synthetic cannabi-noids. In light of the THC finding, the analysis cannot end because THC is the psychoactive ingredient in a number of distinct controlled substances under the Guidelines. Thus, when an expert determines pure THC is the most analogous controlled substance to a pure synthetic cannabinoid, Factor C requires the sentencing judge to determine which THC-based controlled substance “produce[s] a substantially similar effect on the central nervous system.” U.S.S.G. § 2D1.1 cmt. n. 6(c). Factor C does not permit the sentencing judge to disregard controlled substances that are, by their very nature, mixtures. See id. (requiring the sentencing judge to consider all “controlled substance[s] referenced in this guideline”).
As highlighted above, the main distinction between the THC-based controlled substances is the amount of plant material, see 21 U.S.C. § 802(16); U.S.S.G. § 2D1.1(c), Drug Quantity Table n.H; id., n.I, likely because a decrease in plant material generally means an increase in THC concentration, see Hall et al., supra, at 35. Therefore, the only way to determine which THC-based controlled substance “produce[s] a substantially similar effect on the central nervous system,” is to consider the presence of plant material. To do otherwise would be contrary to the plain language of Application Note 6— requiring consideration of all “controlled substance[s] referenced in [the] guideline” — because a sentencing judge would be permitted, if not required, to disregard all THC-based controlled substances that contain plant material.[10]
Therefore, because: (1) THC is both a controlled substance and a psychoactive ingredient in other controlled substances under the Guidelines; (2) the main distinguishing factor between the THC-based controlled substances is the amount of plant material; (3) the Guidelines require consideration of all “controlled sub-stancefs] referenced in [the] guideline” to determine the effect an analogue has on *923 the central nervous system; and (4) the only way to distinguish between the THC-based controlled substances is to determine the effect the plant material has on the synthetic cannabinoid concentration, I would hold the sentencing judge erred in finding the synthetic cannabinoid potpourri was most similar to pure THC. The record is devoid of any evidence regarding the effect the synthetic cannabinoid potpourri had on the central nervous system and, in the absence of that evidence, there was no record to support the sentencing judge’s application of the 1:167 ratio.
The majority, however, contends the sentencing judge correctly applied Factor C when it considered only the effect of the synthetic cannabinoids.[11] (Maj. Op. 919-20). The majority concludes the plant material should not be considered in conjunction with “synthetic cannabinoids, such as XLR-11, [because synthetic cannabinoids] are listed in Schedule I ... [not] ‘synthetic cannabinoid potpourri.’ ” (Id. at 919).[12] To support this interpretation, the majority relies upon three words in Factor O — “the controlled substance.” (Id.)
But by limiting its interpretation to three words in Factor C, the majority fails to take into account “the language and design of the [Guidelines] as a whole.” United States v. Bruguier, 735 F.3d 754, 765 (8th Cir.2013) (en banc) (Riley, C.J., concurring) (quoting K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)); see also United States v. Godsey, 690 F.3d 906, 910 (8th Cir.2012) (quoting United States v. Davis, 668 F.3d 576, 577 (8th Cir.2012) (“We employ basic rules of statutory construction when interpreting the Guidelines.”)). In the context of Factor C, Application Note 6 plainly calls for the consideration of plant material when assessing which THC-based controlled substance is “most closely related” to a THC analogue. This is required specifically because THC is treated differently than other controlled substances in the Guidelines — namely THC is both a .controlled substance and the psychoactive ingredient in other controlled substances. Consequently, the majority’s analysis leads to the unreasonable result that the “most closely related controlled substance” can never be marijuana, hashish, or hashish oil because it is improper to consider the presence of plant material when analyzing THC analogues.. In my view, the majority’s conclusion is contrary to the plain language of Application Note 6 and the treatment of THC in Guidelines.[13] Dolan *924 v. U.S. Postal Serv., 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006) (“The definition of words in isolation, however, is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.”).
For these reasons, I would reverse the Ramoses’ sentences and remand for resen-tencing consistent with this opinion.[14] Because the government failed to present evidence on the actual effect the synthetic cannabinoid potpourri had on the central nervous system, the district court should be limited to the current evidentiary record and the sentencing judge should impose a marijuana equivalency ratio of 1:1, United States v. Thomas, 630 F.3d 1055, 1057 (8th Cir.2011) (per curiam) (“ ‘[Limiting the Government to one bite at the apple’ ” (quoting United States v. King, 598 F.3d 1043, 1050 (8th Cir.2010))),[15] as it was the ratio applied prior to the government’s recent position that the 1:167 ratio is appropriate in cases regarding synthetic cannabinoid potpourri, U.S. Dep’t of Justice, supra, at 62; see also Grass, supra, at 40-42.
III.
For the foregoing reasons, we affirm Mary’s conviction and sentence and Earl’s sentence.

. The majority relies on the testimony of government expert Dr. Jordan Trecki to support the district court’s factual finding that the synthetic cannabinoids produce the most similar effect on the central nervous system as pure THC. (Maj. Op. 918-19). But Dr. Trecki admitted at the evidentiary hearing that he did not analyze the synthetic cannabinoid potpourri to determine what, if any, effect the plant material had on the potency of the synthetic cannabinoid. In the absence of this testing, Dr. Trecki lacked the scientific data to support his conclusion that the “organic plant material would not change the active substance's ... potency.” (Id. at 919).

. Further, imposition of a 1:167 ratio for possession and distribution of synthetic can-nabinoid potpourri results in an extreme increase in base offense level in comparison to any of the other THC-based controlled substances’ marijuana equivalency ratios.

.Notably, as late as 2011, the Drug Enforcement Administration’s ("DEA”) guidance indicated synthetic cannabinoid potpourri had the most "similar effect[]” to marijuana — a "mixture.” U.S. Dep’t of Justice, Drug Enf’t Admin., Drugs of Abuse 62 (2011). Based upon the DEA’s 2011 understanding of synthetic cannabinoid potpourri, “[t]he conversion ratio of synthetic drugs to marijuana [was] 1:1.” Jeffrey C. Grass, McFadden v. United States: Deconstructing Synthetic Drug Prosecutions, 39 Champion 34, 40-42 (2015). Not until recently did the DEA begin to assert that synthetic cannabinoids "are most similar to ... THC” under thé marijuana equivalency table. Id. Consequently, the government’s argument and the majority’s holding undermines the prior position of the DEA that the plant material associated with synthetic can-nabinoid potpourri should be considered when analyzing a THC analogues’ effect on the central nervous system.

. At the time of the Ramoses' convictions, the DEA had temporarily listed XLR-11 as a Schedule I controlled substance pursuant to 21 C.F.R. § 1308.11(h)(2).

. The majority also concludes the sentencing judge did not err in using the weight of the entire seized substance to determine the Ra-moses' base offense level. (Maj. Op. 919-20). I agree. I disagree with the majority only to the extent the sentencing judge erred in its identification of THC as the most similar substance. Had the sentencing judge taken into account the plant material in determining the THC-based analogue to synthetic cannabinoid potpourri, the proper weight of the substance would be "the entire weight of [the] mixture *924 ... containing a detectable amount of the controlled substance.” U.S.S.G. § 2Dl.l(c), Drug Quantity Table n.A.

. I acknowledge this Court recently affirmed the application of a 1:167 ratio in a case regarding synthetic cannabinoids on other grounds. United States v. Carlson, 810 F.3d 544, 556 (8th Cir.2016).

. I would conclude the government is bound by the current evidentiary record upon resen-tencing, but acknowledge that in some instances this Court has permitted the sentencing judge to hear additional evidence. See, e.g., United States v. Dawn, 685 F.3d 790, 798-800 (8th Cir.2012); United States v. Williams, 627 F.3d 324, 329 (8th Cir.2010). However, no such request has been made in this case.